FULLER *v.* YENTZER.

SAME *v.* GOODRICH.

1. Reissued letters-patent No. 3,218, granted Dec. 1, 1868, to Henry W. Fuller, assignee, by mesne assignments, of Israel M. Rose, for an improvement in a tuck-creasing attachment in sewing-machines, were not superseded by letters-patent No. 28,633, issued June 5, 1860, to Henry W. Fuller and Anthony W. Goodell.

2. The court holds that the apparatus constructed, used, and sold by the respondents do not infringe the complainants' patent.

APPEALS from the Circuit Court of the United States for the Northern District of Illinois.

*Mr. E. B. Barnum* and *Mr. E. N. Dickerson* for the appellants.

*Mr. Walter B. Scates, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Modifications or alterations in an invention consisting in a combination of old ingredients, which merely substitutes another old ingredient for one of the ingredients in the patented combination, is an infringement of the patent, if the substitute performs the same function and was well known at the date of the patent as a proper substitute for the one omitted from the patented invention; but the rule is otherwise if the ingredient substituted is a new one, or performs a substantially different function, or was not known at the date of the patent as a proper substitute for the one omitted from the patented combination.

Both of these suits were instituted by Henry W. Fuller, who became, by certain mesne conveyances, the owner of the invention by assignment in due form. Since then, Isaac W. Barnum, having become the owner of the patent, was, on motion of the respondents, made a party complainant in each of the two suits.

Sufficient appears to show that Israel M. Rose was the supposed inventor of the improvement; that the original patent was granted to James Wilcox, assignee of the inventor; that the first-named complainant, having subsequently become the owner of the patent, surrendered the same; and that the reissued patent, bearing date Dec. 1, 1868, on which the present suits are founded, was granted to the rightful owner of the invention at the date of the reissued patent.

Remarks respecting the title of the complainants are unnecessary, as it is not questioned by the respondents, nor is it necessary to enter into any comparison of the reissued patent with the original, as the means for such comparison are not exhibited in the record.

Briefly stated, the allegation is that the patented invention consists of a new and useful improvement in mechanism for marking cloth in a sewing-machine, or for a new method of marking a crease in cloth by what is known as the pinching process, and for other improvements in the mechanism of a

tuck-creaser, independent of the creasing devices, and that the respondents, since the first day of May, 1872, have infringed the same, as more fully set forth in the bill of complaint.

Process was served; and the respondents appeared and filed an answer, setting up the following defences, which it is important to notice: 1. That the supposed improvement was not patentable, because it had been in public use more than two years before the inventor applied for a patent.   2. That it was not patentable, because it was well known and had been in common use long before the alleged invention.   3. They deny the charge of infringement, and justify all their acts under a patent granted to Enoch S. Yentzer, dated May 28, 1872, for an improvement in tuck-markers for sewing-machines.

Proofs were taken, the parties heard, and the Circuit Court entered a decree in each case, dismissing the bill of complaint. Immediate appeal was taken by the complainants in each case to this court, and the questions here are the same as those considered and decided in the Circuit Court.

Previous to that invention the statement of the inventor is that fabrics were marked or creased by a protuberance or point and a notch or indentation caused to impinge upon opposite sides of the fabric, and the patentee states that that mode of marking or creasing the fabric is open to the objection that fine goods will sometimes be cut by the marking operation, while in heavy or flimsy goods the crease is often insufficiently defined.

Instead of the point and notch, the present invention forms marks, ridges, or creases in the fabric by a succession of nips or pinches of the same while it has motion imparted to it, in line with the crease.   Motion is usually given to the fabric by the feed-mechanism of a sewing-machine, in which it is intended it shall be used as an attachment; but the motion may be imparted to the fabric in any other manner.

Objections, it is said, exist to other modes of forming creases for the described purpose, and that the process of nipping or pinching is designed to obviate those objections to other tuck-markers, and to produce a more efficient instrument.   Devices called jaws are provided for the purpose, which are caused to descend while open, with more or less force or pressure, on the fabric, and then in being closed are capable of seizing a portion

of the fabric and compressing the same tightly, the fabric at the same time being properly supported against the descending force of the jaws, and which operation, being repeated while the fabric is moved along, produces the required ridge or crease, in the line of which the fabric will naturally fold, to facilitate the forming of the tuck for future operations.

Said invention also comprises certain details of construction, arrangement, and combination to adapt tuck-markers for use in connection with sewing-machines, forming a tuck-creasing mechanism having an upper and under part adjustable as to its relation with the needle of a sewing-machine, and to be operated by the sewing-machine. Reference is made to the drawings for the different views of the apparatus when properly arranged in a sewing-machine in operation, to effect the described result. Detailed description is also given of the various elements or ingredients of the apparatus and of their mode of operation.

Mention is first made of the base-plate, which has an upright standard firmly secured thereto, so as to form a permanent part of the apparatus. To the upper end of the standard a lever is jointed which carries a spring-branch, buckled at its lower end with the blade that forms one of the jaws for seizing and crimping the fabric. Freedom of motion to and from the fabric is insured by the lever, jointed as before explained, the suggestion being that the stiffness of the leather prevents any lateral motion of the creasing device; and the statement is that the lever is also designed to receive the force of the arm or other moving part of the sewing-machine, and that it transmits the motion directly to the jaws through the spring-branch, which is carried by the lever jointed to the upper end of the standard.

Besides the base-plate there is a plate called the bed-plate, with a small upright projection, to which is permanently fixed a spring-blade having its front end bent downward, and which forms a mate to the jaw already described. These jaws are hinged together, as shown in the drawings, their lower ends being sharp or serrated, in order more readily to seize the fabric.

Effectual means are provided to cause the marking device to react after each creasing action, and follow the upward motion of the needle-arm, in order to give room for the free insertion

and removal of the work; and this spring-branch shown in the drawings is made to hold the outer jaw away from the inner one when in the normal position there exhibited.

Creases are to be made in the fabric, and the design is that the creasing action shall take place as nearly as possible in front of the needle, and in line with the arm of the sewing-machine; and, to secure that, an extension-plate is provided extending out laterally from the base-plate in line with the movement of the feeding device, which supports the material under the jaws, and receives their impinging action in the operation of making the crease. By that arrangement the creasing devices are brought across the presser-foot in the proper location with respect to the needle for performing the creasing operation.

Upper and under devices are employed, on opposite sides of the cloth, to effect the patented result, and a particular description is given of the means and mode of operation of the same, by which the jaws seize the fabric, and double up and compress the same so as to produce the described creases by the apparatus when attached to a sewing-machine. When properly attached, the several parts of the apparatus are so arranged that the lever is immediately under the arm of the sewing-machine, and the arm, when the machine is operated, will strike the lever and actuate the creaser or tucker.

Tucking may also be done by the apparatus when attached to a sewing-machine; but, in order to accomplish that, a fold must first be made, by hand, in the fabric, the gauge being fastened by a set-screw to make the seam the proper distance from the edge of the required tuck. Fit means are also shown in the drawings for adjusting the apparatus in such relation to the needle that the distance from the needle to the jaws will be at least double the distance between the needle and the gauge.

Suffice it to say that one movement or alteration of either part will adjust the whole tucker with respect to the needle, as the upper part is permanently connected with the under part, and when adjusted as required the fabric is placed in the machine with the folded edge against the gauge, and the machine being started, the lever carries down the spring-branch and with it the jaws to the surface of the fabric, which operate as before explained. On the upward motion of the arm the jaws

rise and open by the elasticity of the springs, the fabric being advanced by the feeding mechanism of the sewing-machine. Movements of the kind are continued and the pinching process repeated until the cloth is fed through the machine, causing a well-defined ridge to be formed in the fabric by the creaser at the same time that a seam is sewed in the folded part of the same, forming a tuck.

Eight claims are appended to the specification, and the charge is that the respondents have infringed the first, second, fifth, sixth, and eighth, five in all, substantially as follows: 1. The mechanism as described for forming a ridge or ridges on fabrics to be afterwards folded in the line of such ridge. 2. The method of nipping or pinching the fabric to form ridges or creases thereon by means of jaws opened and closed at intervals to seize and pinch the fabric when at rest, and then release it as the same is moved along intermittently by a suitable feeding mechanism. 3. The combination of the creasing device or devices of a tuck-marker with a jointed lever, for the purposes set forth. 4. A tuck-creasing mechanism, such as described, having its upper and lower parts connected, and together adjustable, as to its relations with the needle of a sewing-machine, and operated by the sewing-machine, as set forth. 5. The combination with a tuck-marker having upper and under parts connected, and together adjustable as specified, of the lever and spring, for the purposes set forth.

Argument to show that a result is not patentable is not necessary; as that proposition is decided in the opinion in the preceding case, as well as in many other cases to which reference might be made. Apply that rule to the several claims of the patent in this case, which it is alleged the respondents have infringed, and it is clear that they are all for the apparatus, or certain portions of the apparatus, described in the specification of the patent set forth in the bill of complaint.

Whether tested by the descriptive portion of the specification or by the specific claims appended to the same, it is clear that the invention consists of a described apparatus intended to be attached to a sewing-machine for the purpose of making a mark, ridge, or crease in cloth by a succession of "nips or pinches thereof" while it has motion imparted to it by the

feeding device of the sewing-machine, as already sufficiently explained, the work of sewing being performed during the same operation of the feeding device.

Detailed description is given of the elements of the apparatus, from which it plainly appears that the invention does not include any described means of attaching the apparatus to the sewing-machine. Particular means of the kind are neither described nor claimed, nor are they shown in the drawings in a way to justify the conclusion that the means of attaching the apparatus to the motive power are any part of the invention. Instead of that, the patentee states that motion may be imparted to the apparatus in any convenient manner; nor is there any thing in any one of the eight claims of the reissued patent which would afford any support to a different theory.

Fuller's patent for his own invention preceded that of Rose by several years; but it is evident from a comparison of the two that they are substantially different in many respects, so that the latter may be considered as valid to the same extent that it would have been if the first invention had never been made.

Improvements in an apparatus of the kind may be valid if new, and if they accomplish a new and useful result, even though all the elements of the same are old, provided the combination or arrangement of the elements is new and of such a character that it involved invention to construct the combination or arrangement. When a subsequent apparatus is substantially the same as one which precedes it, the former is not the proper subject of a patent; but if it be substantially different in construction and mode of operation, then it is as much the proper subject of a patent as if nothing of the kind had ever before been invented.

Tested by these rules, it is clear that the Rose patent is not superseded by the Fuller patent, which preceded it in point of time.

Two of the defences set up by the respondents, to wit, the first and second, must also be overruled, for the reason that they are not sustained by the proofs exhibited in the record.

They also deny infringement, and the decision in the case must turn upon that issue. Infringement is charged by the

complainants, and the burden of proof is upon them to sustain the charge. Beyond doubt, it is established in these cases that all the elements or ingredients of the patented apparatus are old, and that the invention consists in the combination or arrangement of the several devices of which the apparatus is composed.

Differences exist in the answers filed in the two cases; but the respondents in both aver and allege that all the tuck-markers or creasers constructed, used, or sold by them were constructed under the patents to Enoch S. Yentzer, and in conformity therewith, and that they have in no respect infringed or violated the rights of the complainants. Coming to that proposition, it is plain that it involves two questions: 1. Whether the respondents have constructed, used, or sold apparatuses not constructed in conformity with the patent under which they seek to justify all their acts. 2. Whether the apparatuses which they have constructed, used, or sold infringe the patent described in the bill of complaint.

Some difficulty attends the solution of the first question, because all the evidence applicable to the three cases was taken together, to save expense. It consists of depositions, admissions, documents, models, and other exhibits; but, in view of the whole, the court is of the opinion that the apparatuses constructed and sold by the respondents were constructed in conformity with the patents under which they profess to act.

Support to that view is also derived from the opinion of the circuit judge exhibited in the record, in which he admits that the complainants would be entitled to a decree if their construction of the Rose patent was correct. Damages are claimed in that case for an alleged infringement of the sixth claim of the patent, which is for tuck-creasing mechanism such as described, having its upper and lower parts connected, and together adjustable as to its relation with the needle of a sewing-machine, and operated by the sewing-machine, as set forth.

Nothing can be plainer than the proposition that the claim there made is for the previously described apparatus, when arranged in a sewing-machine, as the motive power for operating the patented apparatus. Judging from the opinion of the cir-

cuit judge, it would seem that the complainants did not claim that the respondents had constructed improvements not within their patent, but that they, the complainants, could claim under their patent every form of mechanism by which a creaser is attached or adjusted to a sewing-machine, by which unity of adjustment is accomplished, which is plainly an erroneous construction of their patent.

Viewed in the light of all the proofs, the court is of the opinion that the apparatuses constructed and sold by the respondents were constructed in conformity to the patents under which they justify in their answer.

Five of the claims of the patent, to wit, the first, second, fifth, sixth, and eighth, are involved in the charge of infringement in the third suit, which is the second suit under consideration in this case. Enough has already been remarked to show what the opinion of the court is in respect to the construction of the patent, and that the decision of the case depends upon the question of infringement. What has already been remarked is sufficient to explain the views of the court as to the nature and character of the apparatus of the complainants, and its mode of operation, and it will be sufficient to refer to the opinion just delivered for a full exposition of the views of the court as to the nature, character, and mode of operation of the patent under which the respondents justify in their answer. Better means of comparison and decision need not be required than is found in the respective specifications of these patents. Careful comparison of the two instruments has been accordingly made, and the court is unhesitatingly of the opinion that the charge of infringement is not proved, and that there is no error in the record.      *Decrees affirmed.*

MR. CHIEF JUSTICE WAITE, MR. JUSTICE MILLER, MR. JUSTICE STRONG, and MR. JUSTICE BRADLEY, dissented.