## MENZER v. KENWORTHY.

(District Court, D. Connecticut. August 31, 1921.)

### No. 1514.

1. **Patents ⟸118—Combination may be claimed which does not do useful work separately.**

   A part or a combination may be claimed in a patent, though it cannot do useful work separate from the rest of the machine or apparatus of which it constitutes a part.

2. **Patents ⟸172—Claim not strictly interpreted.**

   Where an invention is substantial and meritorious, a claim should not be strictly interpreted and limited.

3. **Patents ⟸328—1,230,750, for strip metal blocker, held valid and infringed.**

   Claim 1 of letters patent No. 1,230,750, for improvements in strip metal blockers, *held* valid and infringed.

In Equity. Suit by Joseph C. Menzer against Charles F. Kenworthy. Decree for plaintiff.

Munn, Anderson & Munn and T. Hart Anderson, all of New York City, for plaintiff.

George E. Hall, of New Haven, Conn., for defendant.

THOMAS, District Judge. This is the usual suit alleging infringement of letters patent No. 1,230,750, issued to the plaintiff June 19, 1917, for improvements in strip metal blockers. The defenses are invalidity and noninfringement.

By stipulation only the first claim is in suit. It reads:

"The combination, with a rotary block, of a base movable with respect to the block, a pair of standards carried by the base and extending therefrom so as to embrace one side of the block, a yoke pivoted to the free ends of the standards and adapted to loosely embrace the opposite side of the block, means to throw the yoke outwardly so as to clear the block when the base is moved as aforesaid, and an endless gripping member operated over said standards and yoke and including a loop or bight carried by the yoke outwardly to clear the block during movement of the base."

The patentee says in the specification that the invention "relates to metal-handling machinery and has particular reference to rolling mill appliances," and that the primary object of the invention is:

"To provide a device automatic or practically automatic in its nature for initiating the rolling or winding of a sheet or strip of metal or the like upon a block as such sheet or strip is received from the rolls of a rolling mill or their equivalent."

The specification further sets forth:

"The purpose of the invention is to eliminate the dangers incident to an operator pursuing the usual practice of initiating the winding of the sheet or strip of metal or the like upon the block" and "to provide a device having the capability of facilitating the winding action and providing for the operation of the mill and the output of the plant at a greatly increased speed."

It will thus be seen that the patent is for a "strip metal blocker" generally referred to in the art as a "blocking machine" or "blocker."

Its purpose is to act upon the end of a very thin strip of sheet metal as it comes from the rolling machine, and to guide and wrap the end of the strip about the wooden block of the winding machine. The block is a cylindrical member from 8 to 10 inches in diameter and from 12 to 18 inches in length and is mounted on the end of a rotary shaft.

The surface of the block and the shaft upon which it is carried is positioned in front of the rolls and extends parallel thereto. In other words, the surface of the block is parallel to the surface of the rolls. It is positioned at any point along the rolls at which the strip or sheet of metal emerges from between the rolls and as the rolls are generally 5 or 6 feet in length, while the block is generally from 12 to 18 inches in length, in order to take care of the sheet or strip of metal at different points along the length of the rolls, the block and its supporting shaft and operating devices are generally arranged so that the block may be adjusted, or so as to be parallel to the surface of the rolls at any point along the length of the rolls.

This block, or winding or blocking machine, is usually set so that it will be opposite the bight or point of contact of the rolls and 2 or 3 feet in front of the rolls at the point where the metal subjected to the action of the rolls emerges. A strip or sheet of metal approximately 250 feet in length emerges from the rolls each minute and the blocking machine is designed to take care of this strip of sheet metal as it comes from the rolls.

Before the introduction of blocking machines this work was done by hand. It was a dangerous operation. A workman, called a "blocker," stood in front of the rolls and took hold of the outcoming strip with his hands, directed the end of the strip to the revolving block, laid it thereon, and followed it around the block with his hand, tucking the free end of the strip inward between the oncoming strip and the surface of the roll. During this operation the block is revolving at a speed sufficient to take care of the strip delivered by the rolls and to hold the same taut between the blocking machine and the rolls. Having tucked the end of the strip between the surface of the block and the oncoming strip, it was thus held to the block by pressure, and the subsequent winding of the strip on the block is accomplished by the action of the machine and without further manipulation by the workman. During this dangerous operation the blocker was liable to catch his fingers between the oncoming strip of metal and the block, resulting in serious injury.

Many attempts have been made to substitute a mechanical device for the hand operation in directing the end of the strip of metal to the block of the blocking machine. Among others who sought to solve the problem and design a machine for taking care of this work was the plaintiff.

The record shows that devices of this type were old and well known before plaintiff's invention and had been in common use prior to it.

The plaintiff's machine comprises a base, which is intended to rest upon some suitable support, although such support is not shown in the drawings or described in the specification. The base is designed to

move freely on the support (not shown) both toward and from the block. The block is part of the winding machine, and is supported upon a driven shaft revolving to the left and toward the mill rolls, and this construction is part of the well-known winding machines generally used in rolling mills.

Rising from the base is a pair of standards which curve forwardly at their upper ends, arranged in parallel vertical planes, the general form of which is a semicircle viewed in side elevation with the upper ends directed forwardly. In the upper and front end of the standards there is pivoted a yoke, consisting of two arms, which are parallel to each other and lie in vertical planes parallel to the planes of the standards. Supported by the standards and carried by the yoke are the rollers or pulleys, which support an endless belt, which passes down and through the base and over a tension pulley, the bearings of which have a sliding movement in slotted brackets of sufficient weight to apply tension to the belt. The members of the yoke extending upward are connected at their upper ends by a crosspiece, to which is attached a handle whereby the yoke may be rocked about its pivot, thus causing the belt to either surround and have contact with the block, or to be raised so as to release the block. There is a device for holding the yoke in a raised position, and projecting upwardly from the base at the rear or right hand is a handle, the function of which is described in the specification at page 2, lines 108–111, as follows:

"The blocker or other attendant may then by grasping a handle *33* or its equivalent draw the apparatus bodily rearwardly away from the block until it is to be used again."

In the operation of the device, the base is moved forward towards the block. This causes the belt to contact with the block, and when moved forwardly a sufficient distance, the yoke is released and permitted to drop. This causes the belt to partially surround the block, and the lower pulley, at the forward end of the yoke is beneath the axis of the block and presses the belt close to the surface of the block a slight distance within the periphery of the block below a point coinciding with a horizontal line drawn through the axis of the block. In this position the free end of the strip of metal, as it comes from the rolls, will be guided upwardly between the belt and the surface of the block and will pass over and about the block, and will be deflected rearwardly by the belt and pulley, so that the free end will be caught between the incoming strip and the surface of the block and locked thereto. After one or two winds, the strip will be caught and held by the block whereupon the yoke will be raised upwardly and the base moved to the right of the machine, removing the belt entirely from contact with the block or the metal which is being wound thereon, and the winding continues until the entire strip is discharged from the rolls. Thus it appears that the belt is driven by contact with the block, so that the belt and the block and the incoming strip of metal all move at the same relative speed, and that the pressure of the belt against the block tends to draw the lower end of the yoke and the pulley, and the belts surrounding the pulley, in close contact with the block beneath the axis thereof, and within

the periphery below a horizontal line cutting the axis. Thus the belt performs the function of a deflector, which properly guides the free end of the strip as it passes downwardly about the block, so as to tuck it inwardly between the incoming strip of metal and the surface of the block.

The claim is alleged to be invalid for a number of reasons, of which only three need be here discussed. The defendant claims:

(1) That the invention is not sufficiently disclosed in the patent.

(2) That the claim does not define a complete operative structure.

(3) That the claim lacks patentable novelty and is an aggregation of old elements.

1. Respecting the first claim, it is my opinion that the specification, when read in the light of the drawings of the patent, is specific enough to teach any one versed in the art how to make the base movable with respect to the block of the machine. It is also specific enough as to the direction of the movement, as it points out clearly that this movement is to be toward and from the block.

[1] 2. The charge that the claim does not define a complete and operative structure lacks merit. It is a well-settled rule that a part or a combination may be claimed in a patent, though it cannot do useful work separately from the rest of the machine or apparatus of which it constitutes a part. Holloway v. Dow (C. C.) 54 Fed. 511, at page 516. In Brammer v. Schroeder, 106 Fed. 918, on page 930, 46 C. C. A. 41, 52, Judge Sanborn said:

"A claim for a machine or for a combination of mechanical devices is not insufficient or invalid because it does not include mechanical devices for uniting and operating the elements of the machine or combination which would readily suggest themselves to mechanics skilled in the art, or which are described in the specification and drawings"—citing Loom Co. v. Higgins, 105 U. S. 580, 585, 591, 26 L. Ed. 1177, and Deering v. Harvester Works, 155 U. S. 286, 302, 15 Sup. Ct. 118, 39 L. Ed. 153.

In the Loom Co. Case, Mr. Justice Bradley (105 U. S. on page 591, 26 L. Ed. 1177) said:

"Nothing further is necessary to be said in order to dispose of the defense which was strenuously urged, and to which the court below attached much importance, that the specification was insufficient in its description of the invention sought to be patented, and failed to show any means of applying it to existing looms, and that independent invention would have to be exercised to make it a practical working apparatus as an attachment of such looms. We shall therefore dismiss that branch of the argument."

[2] I cannot find that the prior art, as it appears in this record, anticipates the claim, even though the extreme view is taken that the several elements of the claim, when taken separately, may be old. There is no question in my mind, however, but that the plaintiff was the first to disclose an endless blocking belt, which, in addition to an embracing movement about the block, has also a positioning movement toward and away from the block. Moreover, I fail to find in the patents introduced in evidence an endless blocking belt which is mounted upon a frame including a relatively stationary member and a pivoted member. Such

being the case, I am constrained to hold that the combination called for in the claim is new and the claim is valid.

The next question is: What scope is the claim to be given in construing it? And, more particularly: Is there any room left for the doctrine of equivalents, in view of the prior state of the same or other arts, as well as the proceedings had in the Patent Office in connection with the patent in suit? I am satisfied that the patentee, whether properly or not, limited claim 1 to a construction in which the base, carrying the belt-supporting members, is movable toward and from the block; the belt in its operative position embracing partly the block, and a section of the belt being capable of being moved outwardly to clear the block when the base is being shifted. A further limitation of the claim resides in the fact that it calls for a pair of standards carried by the base and extending therefrom so to embrace one side of the block, the yoke pivoted to the free ends of the standard loosely embracing the opposite side of the block in its operative position. Inasmuch as the block is cylindrical, it follows that the standards and the yoke must be on diametrically opposite portions thereof.

The Supreme Court of the United States, in Winans v. Denmead, 56 U. S. (15 How.) 329, page 340, 14 L. Ed. 717, speaking by Mr. Justice Curtis, said:

"While it is undoubtedly true that the patentee may so restrict his claim as to cover less than what he invented, or may limit it to one particular form of machine, excluding all other forms, though they also embody his invention, yet such an interpretation should not be put upon his claim if it can fairly be construed otherwise."

And then follow the reasons. Being satisfied that the invention is substantial and meritorious, the strict interpretation insisted upon should not be put upon the claim. It is immaterial, in view of the state of the art, whether one or more standards are used, or whether a yoke or its equivalent—a rigid frame member—is pivoted to one or more standards, the same operations and the same functions result. Neither need the height of the standard or standards be considered, as long as the standard or standards and the yoke or its equivalent are located on diametrically opposite portions of the block.

Thus concluding, I find that any machine built in accordance with plaintiff's Exhibit 7, the Kenworthy patent, infringes claim 1 of the patent in suit.

[3] It is conceded by the plaintiff, in accordance with the provisions of a stipulation entered into by the parties hereto on April 6, 1920, that a machine in which the belt-carrying member is mounted on a fixed pivot, which is immovable with relation to the block, does not infringe the patent in suit. Plaintiff thereby conceded that Exhibit F, one form of defendant's machine, is free from infringement. I am not prepared, however, to hold that the Waclark machines come under this heading. A careful examination of the Waclark machines satisfies me that its belt-carrying member is movable with relation to the block. The extent of the possible movement is immaterial, and the facility with

which the movement may be executed is irrelevant, so far as the issue is concerned. The Waclark machines must thus be held to infringe claim 1 just as much as any machine built in accordance with the Kenworthy patent. Decree accordingly.

So ordered.