**FERNANDEZ v. PHILLIPS et al.**

No. 10234.

Circuit Court of Appeals, Ninth Circuit.
June 11, 1943.

Stanley A. Jerman, E. R. Thurman, and Scott L. Norviel, all of Phoenix, Ariz., for appellant.

Naylor & Lassagne and Theodore H. Lassagne, all of San Francisco, Cal., for appellees.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

Appellees are co-owners, in trust, of Day reissue patent number 18,755. They brought this action in the District Court for infringement of claims 3, 4, 5 and 6 thereof, and the court, holding the patent valid and infringed, gave its interlocutory decree enjoining further infringement and ordering an accounting. On this appeal from that decree both validity and infringement of the patent are in issue.

The patent in suit is for a means of pre-cooling railway refrigerator cars. The standard refrigerator car is cooled by ice contained in the ice bunkers at either end of the car. The ice bunkers are separated from the balance of the car by bulkheads. Air may circulate between each ice bunker and the body of the car by means of openings extending across the bulkhead, one at the top of the bulkhead and the other at the bottom of the bulkhead which rests upon a slatted false floor extending the length of the car. Circulation of the air is normally produced by convection, the air moving downward through the ice bunkers as it is cooled by the ice, and upward in the body of the car as it absorbs heat from the contents of the car. This convection circulation is sufficient to maintain an existing low temperature in the car. However, crops are normally harvested in warm

weather and are warm when loaded into the cars, and something more than the convection circulation just described is desirable to produce an initial lowering of temperature. This is called pre-cooling. Appellees' patent is addressed to this problem.

Pre-cooling was originally accomplished by taking loaded cars to stationary refrigeration plants, where chilled air was forcibly circulated through them until the desired reduction in temperature was achieved. However, this sometimes proved unsatisfactory because of the expense of constructing such plants and the delay involved in getting loaded cars to them from widely scattered harvesting and. loading points. In consequence, portable pre-cooling devices were developed which could be taken to the cars where they were being loaded. These devices relied for their refrigerating effect on ice in the bunkers of the cars, and consisted of means for accelerating the circulation of air from the ice bunkers through the body of the car by blowers. Some of these devices were patented.

Patent number 1,811,529, issued to Day and Barstow, filed June 13, 1928, was for an engine-driven fan mounted on an automobile truck which was placed alongside a refrigerator car and connected by large tubes to the roof hatches provided for loading ice into the two ice bunkers. The fan drew air from the hatch at one end of the car and returned it to the other, through the tubes, thus causing air to circulate from one ice bunker to the other through the car.

The Huston patent, number 1,736,788, filed August 5, 1926, was for an electrically driven fan which was set up temporarily in the center of a loaded car and connected by tubes to the upper opening in each bulkhead of the ice bunkers. Air from the center of the car was forced through the tubes into the tops of the ice bunkers so that it flowed downward through the ice bunkers and back into the body of the car.

The Mann and Galloway patent, number 1,696,441, filed July 5, 1928, was a process patent for the pre-cooling of refrigerator cars by forcing air out of the upper bunker openings into the body of the car, reversing the direction of the normal convection circulation. The specifications showed this as done by means of "bunker blowers," electric fans temporarily supported above the ice in the bunkers.

The patent here in suit is a reissue of number 1,842,660, filed August 7, 1929, after the three patents just mentioned. It describes a means for circulating air to pre-cool a refrigerator car, consisting of a detachable panel to be mounted over the upper opening in the ice bunker bulkhead, thus entirely closing that opening except for a circular opening in the panel, in which an electric fan is mounted which forces air through the bunker. The invention claimed is a combination, and claim 4, which may be taken as typical of the claims here in suit, reads as follows: "In a refrigerator car, the combination with an ice bunker having openings affording communication between the ice bunker and the interior of the car; of a detachable panel adapted to overlie one of said openings, said panel having an aperture, a fan mounted in said aperture to direct a current of air created by said fan through a path extending through said ice bunker and the interior of said car, and a motor on the outside of said panel for driving said fan."

Claims 3 and 5 specify that it is the upper bunker opening that is to be covered by the detachable panel. Claims 3, 5 and 6 specify that the fan is to be mounted on the panel, and do not require the motor to be outside the panel. The claims do not differ. otherwise in substance.

The device described by the Mann and Galloway patent, number 1,696,441, supra, for performance of the process claimed therein, consisted of a refrigerator car equipped with an ice bunker having openings affording communication between the ice bunker and the interior of the car, a detachable panel to overlie the upper of such openings, said panel having an aperture connected by pipe with a fan mounted to direct a current of air created by said fan through the panel along a path extending through said ice bunker and the interior of said car, and a motor for driving said fan. The claims of appellees' patent in suit differ from this disclosure only in mounting the fan in the aperture of the panel, supporting the fan by the panel, placing the motor outside the panel, permitting use of the panel in either the upper or lower opening, and forcing circulation of air either upward or downward through the ice bunkers, whereas the process patented by Mann and Galloway was its upward circulation. Unless these differences constitute invention, the patent in suit was anticipated by the disclosures of the Mann and Galloway patent.

A "mere carrying forward of the original thought, a change only in form, proportions, or degree, doing the same thing in the same way, by substantially the same means, with better results, is not such an invention as will sustain a patent." Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U.S. 285, 292, 37 S.Ct. 502, 505, 61 L.Ed. 1136. Tested by that standard, we find no patentable invention in appellees' deviation from the device shown by Mann and Galloway. The location of the fan and motor inside, outside or upon the partition, and the location of the partition in the upper or lower bunker opening, are mere matters of convenience involving no peculiar problems and producing no peculiar results. They lie within the realm of the ordinary skill of the art. Neither was it invention for Day to recognize that circulation of the air might be in either direction. When the purpose of circulation is merely to cause temperatures throughout its path to approach uniformity, a change in the direction of circulation is not a substantial change. Waxham v. Smith, 9 Cir., 70 F.2d 457, affirmed 294 U.S. 20, 55 S.Ct. 277, 79 L.Ed. 733. We conclude that whatever advance Day made over the disclosure of Mann and Galloway did not involve invention, so that Day's patent was anticipated by their disclosure, and that the patent is, for that reason, invalid.

Aside from the question of anticipation, the appellees' patent is invalid because it does not disclose a patentable combination. The device of an electric fan in a portable panel to be mounted in an opening for purposes of ventilation is old. A patent for one was issued to Perry in 1884 (number 307,794), one to Polk in 1922 (number 1,593,951), one to De Bothezat in 1930 (number 1,752,372), and one to Harris in 1930 (number 1,769,922). The combination claimed by Day is in effect the combination of such a fan with a standard refrigerator car. Old elements may be combined into patentable invention, but, "so long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements." Richards v. Chase Elevator Co., 158 U.S. 299, 15 S.Ct. 831, 833, 39 L.Ed. 991. See, also, Mantle Lamp Co. v. Aluminum Products Co., 301 U.S. 544, 57 S.Ct. 837, 81 L.Ed. 1277. Here, the refrigerator car performs its old function of cooling, and the fan its old function of circulating air. If Day used the circulation for a new purpose the most that

can be said is that he found for an old device a new but analogous use. A new use for an old device may be patentable when the relation of the device to the new use is remote (Warren Webster & Co. v. C. A. Dunham Co., 8 Cir., 181 F. 836), but not when, as here, the new use is analogous to the old and in the same art. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 473, 55 S.Ct. 449, 79 L.Ed. 997; Concrete Appliances Co. v. Gomery, 269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222; Pevely Dairy Co. v. Borden Printing Co., 9 Cir., 123 F.2d 17.

Because it was substantially more efficient in operation and more convenient to handle, the Day device supplanted its predecessors, achieving great commercial success, and appellees stress this as evidence of invention. It is true that commercial success is persuasive evidence of invention, and may prove decisive in doubtful cases (Research Products Co. v. Tretolite Co., 9 Cir., 106 F.2d 530), but it cannot overcome a clear lack of novelty and invention. Celite Corp. v. Dicalite Co., 9 Cir., 96 F.2d 242; certiorari denied 305 U.S. 633, 59 S.Ct. 101, 83 L.Ed. 407. Lack of patentable invention is here plain and commercial success, however great, cannot serve to sustain the patent.

Judgment reversed.