## HYDRAULIC PRESS MFG. CO. v. RALPH N. BRODIE CO. et al.

No. 22086–G.

District Court, N. D. California, S. D.

July 27, 1943.

Toulmin & Toulmin, Rowan A. Greer, and D. C. Staley, all of Dayton, Ohio, and Hackley & Hursh, of San Francisco, Cal., for plaintiff.

Clifton V. Edwards, of New York City, Edward A. Hathaway, of Philadelphia, Pa., and Oscar Mellin, of Oakland, Cal., for defendants.

GOODMAN, District Judge.

This is a suit wherein The Hydraulic Press Manufacturing Company, an Ohio corporation, charges the infringement of certain United States Letters Patents relating to an hydraulic metal drawing press.

The complaint named The Ralph N. Brodie Company, a California corporation, and Baldwin-Southwark Division of the Baldwin Locomotive Works, a Pennsylvania corporation, along with fictitious parties, as defendants. Service of process upon the defendant Baldwin-Southwark Division of the Baldwin Locomotive Works was quashed for lack of venue and the action dismissed as to it. Defendant The Ralph N. Brodie Company, a California corporation, and The Pelton Water Wheel Company, a California corporation, wholly-owned subsidiary of Baldwin Locomotive Works, by separate answers, denied infringement and alleged the invalidity of plaintiff's patents.

The complaint set forth that plaintiff was the owner of the following numbered patents, assigned to it by Walter Ernst, alleged inventor, and Director of Engineering of plaintiff corporation: No. 2,067,265, No. 2,136,240 and No. 2,167,941.

At the trial all claims against defendants arising under patent No. 2,167,941, no evidence having been introduced relating thereto, were abandoned, and therefore plaintiff is entitled to and may have no relief against defendants for any claim or claims arising under said numbered patent.

Defendant The Ralph N. Brodie Company manufactures and sells fluid meters and purchased the accused device or press within six years prior to the commencement of the action from The Pelton Water Wheel Company, which, in turn, purchased the same from the Baldwin-Southwark Division of the Baldwin Locomotive Works; thereafter it (Brodie Company) used the device in stamping out the products which it sold in the course of its business. Plaintiff is a large manufacturer of hydraulic blank-holding or hold-down presses. The evidence showed that during the last five years, plaintiff sold presses embodying the claims of the two patents in suit, of a sales value of approximately $1,200,000, among them being presses especially manufactured for and sold to large airplane manufacturing and automobile manufacturing plants.

Plaintiff contends that machines embodying the claims of the patents produce or draw forms of varying designs suitable for many diversified needs of manufacturers with an efficiency, smoothness and rapidity unknown to the presses preceding them.

In patent No. 2,067,265, the inventor states the objects of his invention as follows:

"One object of my invention is to provide a hydraulic double-acting press having a drawing piston and a clamping piston arranged to move substantially simultaneously into position during the working stroke, until the blank is clamped whereupon the drawing piston continues the work of forming the article." (Pltf. Ex. 4, p. 1, 11.6–12, left hand column.)

"Another object is to provide hydraulic double-acting metal-drawing press of the above described type, wherein the clamping devices are provided with means for adjusting the clamping pressure so as to exert a predetermined force upon the blank during the drawing operation." (Pltf. Ex. 4, p. 1, 11.7–12, right hand column.)

"Another object is to provide a hydraulic acting metal-drawing press having a main drawing piston and platen arranged to engage a clamping piston in such a manner that the clamping piston tends to push against the platen during the working stroke and be pulled away from the work piece by the platen during the return stroke." (Pltf. Ex. 4, p. 1, 11.22–29, right hand column.)

Of the fifteen claims set forth in this patent, claims 7, 9, 10, 11, 14 and 15 only were relied upon. It is claimed that this patent is a combination patent, i. e. a. combination of different elements to accomplish the desired result by co-operation of such elements.

From Claim No. 7, this combination in a hydraulic press may be briefly described as—

1  a double acting pressing plunger

2  a platen connected thereto

3  a clamping plunger

4  a clamping member operated thereby

5  the platen and member operated thereby being adapted to engage one another

6  means for restricting the discharge of pressure fluid from around one of said plungers

7  the purpose of the foregoing combination of elements being to maintain the platen and clamping member in engagement with one another during the motion thereof.

It would unduly prolong this opinion to set forth, even in brief break-down, claims 9, 10, 11, 14 and 15. Suffice it to say that additional elements in combination are set forth, alleged to provide the means for the effectuation of the objects of the invention.

In patent No. 2,136,240, the inventor states the following to be the objects thereof:

"One object of this invention is to provide a triple-action drawing press having clamping and drawing devices, together with a movable support for the article being drawn, this support being arranged to provide a movable rest for the drawing device so as to prevent the latter from pushing its way through the article during the drawing operation."

"Another object is to provide a triple-action drawing press having a hydraulic main cylinder and ram for operating a drawing plunger, hydraulic clamping cylin-

ders and rams for operating the clamping member and a hydraulic supporting plunger for supporting a portion of the article being drawn during the drawing operation, the clamping plunger being hydraulically connected to the push-back side of the press so as to be operated by the fluid expelled therefrom during the advance of the main plunger, the clamping plungers preferably having a pressure relief valve associated therewith for releasing the clamping pressure when a predetermined pressure is being exerted."

Claims 7, 8, 9 and 10 only are here asserted.

The break-down of claim 8 shows the following elements in combination:

(1) a pressing plunger,

(2) a platen operated thereby,

(3) a clamping cylinder in said platen,

(4) a clamping plunger in said cylinder,

(5) means for supplying fluid to said clamping cylinder,

(6) means responsive to the pressure built up in the clamping cylinder by the motion of said clamping cylinder relatively to said clamping plunger for cutting off said fluid-supplying means from said clamping cylinder whereby the fluid is entrapped and pressure developed by the motion of said platen relatively to said clamping plunger and caused to operate said clamping plunger to clamp the work-piece.

(7) and a pressure release device for releasing fluid from said clamping cylinder in response to the attainment of a predetermined pressure.

A like comment may be made as to the other claims of this patent, to that made with respect to the claims of patent No. 2,067,265. Applications for both patents were co-pending in the patent office, and defendants have not pleaded the first patent as an anticipation or disclosure of the second.

In the seventeenth century, Blaise Pascal discovered the principle, now known as Pascal's law, that fluids transmit pressure equally in all directions. It is not here contended that Ernst was the discoverer of the hydraulic press; for it was the Englishman Joseph Bramah who, during the last of the eighteenth century, made the first practical application of Pascal's law in his invention of the hydraulic press.

In this case, the evidence showed that prior to the alleged invention of Ernst, there was no commercially successful press on the market, combining the feature of hydraulic clamping means for holding the work piece while the drawing operation proceeded by means of hydraulic action of the main forming plunger of the press.

### Validity of Plaintiff's Patents

Defendants vigorously contend that the patents in suit, while constituting a combination of elements, are nothing more than the skilled artisan's labor of combining elements well known in the art to effect the combination projected in plaintiff's patents. In support of this contention, eight prior art patents were presented and expert testimony adduced thereon. Able counsel on both sides (Captain Greer and Mr. Edwards respectively), by charts, diagrams, and carefully constructed models, have greatly lightened the labor of the Court in both understanding and deciding the problem involved. To go into intricate detail as to each part or element involved in plaintiff's patents, in the prior art patents, and in the accused's device, would not only transform this opinion into a treatise, but would also give indication of a vast technical knowledge which this Court does not possess.

I can only "divine" the best I can from the history of the art as presented objectively, whether plaintiff's combination is a new contribution, or results from what has been called "the day to day capacity of the ordinary artisan." Such judgment as I exercise in this matter is wholly personal, guided of course by the able contributions of the parties and counsel, and must, as has been said, be "in that sense arbitrary." Kirsch Mfg. Co. v. Gould Mercereau Co., 2 Cir., 6 F.2d 793, 794.

The combination described in plaintiff's patents, scrutinized in the floodlight of present-day facts, according to defendants' arguments, would appear to have been an easy problem, and according to defendants' experts, one that any reasonably skilled workman could have put together at any time in the past. That, however, by well stated judicial pronouncements, is not the real test. Great changes very often appear to be very simple when viewed ex post accomplishment. Diamond Rubber Co. v. Consolidated Tire Co., 220 U.S. 428, 31 S. Ct. 444, 55 L.Ed. 527.

Is this a new combination or union of elements, whether old or new, that does in fact produce a new and useful result? If it is, the patents are valid. Hailes v. Van Warmer, 20 Wall. 353, 22 L.Ed. 241; Leeds & Catlin v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805; Cantrell v. Wallick, 117 U.S. 689, 6 S.Ct. 970, 29 L.Ed. 1017; Hoeltke v. Kemp Mfg. Co., 4 Cir., 80 F.2d 912.

The Ninth Circuit has recently said that "so long as each element performs some old and well known function the result is not a patentable combination but an aggregation of elements." Fernandez v. Phillips, 9 Cir., 136 F.2d 404, decided June 11, 1943.

However, I am satisfied that the combination here is not of that nature. The fundamental purpose of the claims in the two patents in suit is to make more facile and economical the operation of a hydraulic press in the shaping and forming of metal parts. The novelty consists in a facility and economy never before disclosed. If the claims of the patents in suit were nothing more than a grouping together of old elements separately disclosed heretofore in the art, then the rule referred to in Fernandez v. Phillips, supra, would be applicable. We are here concerned with a complicated mechanism, which has a definite purpose to fulfill. If by virtue of the combination, the purpose is accomplished in a manner never theretofore disclosed, it has that novelty which bespeaks for it the monopoly bestowed under the patent law. Hoeltke v. Kemp Mfg. Co., 4 Cir., 80 F.2d 912.

What the patentee here really did was to arrange in combination of pressure certain means that would hold in place a workpiece at a predetermined amount of pressure (properly adjustable) during the working stroke of the pressing plunger in order to allow the proper flow of the metal during the forming operation. Whether this was a "flash of genius" or the laborious result of countless experiments or by what mental process it was achieved I do not find it necessary to decide. What was accomplished in fact, it seems to me, is the only matter of importance. Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., 7 Cir., 132 F.2d 812, 815.

I think that Ernst made a useful discovery. True, he did not create some new art; but, viewed in the light of the rather crude machines which antedated him, and which appear to have contributed little of a utilitarian character, the later machine which resulted from his invention is fully worthy of patent protection. Being a meritorious improvement, the rule "ut res magis valeat quam pereat" applies. Eibel Co. v. Minnesota & O. Paper Co., 261 U.S. 45, 43 S.Ct. 322, 328, 67 L.Ed. 523; Turrill v. Michigan S. & N. I. Railroad Company, 1 Wall. 491, 17 L.Ed. 668.

Certainly the presses embodying the claims of the two patents in suit have achieved commercial success. More than that, they appear to have accomplished great productive capacity in plants, such as airplane and automobile factories, where speed and volume production is essential. This has been declared to be evidence of persuasive weight to prove invention. Research Products Co. v. Tretolite Co., 9 Cir., 106 F.2d 530. I am aware, of course, that a clear lack of novelty cannot be overcome by such evidence. Celite Corporation v. Dicalite Co., 9 Cir., 96 F.2d 242. Having in mind the nature of the claims of the two patents, the makeup of the devices embodying the invention, the state of the prior art, and the presumption of validity from the granting of the patents (Radio Corporation v. Radio Laboratories, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163; J. A. Mohr & Son v Alliance Securities Co., 9 Cir., 14 F.2d 799), I am judicially satisfied that the patents in suit possess the novelty requisite for validity.

Briefly, the following may be said concerning the so-called prior art patents urged by defendants against the validity of the patents in suit:

No. 84625—Grimshaw—1869.

This patent was not a combination. The method of holding the workpiece and the pressure means used to operate the forming plunger were completely independent of each other. Defendants' expert witness admitted essential differences between the Grimshaw patent and the patents in suit. Furthermore the Grimshaw patent was before the patent office while Ernst patent # 2,067,265 was pending and the Ernst patent was granted nevertheless. J. A. Mohr & Son v. Alliance Securities Co., supra.

No. 607,442—Landtved—1898.

Many of the elements of the patents in suit are not to be found in the Landtved patent and certainly not in cooperative

function. Plaintiff's expert witness proved to my satisfaction that Landtved was not a practical operative device.

#### No. 933,010—Wilzin—1909.

This patent was not, in a technical sense of the word, a hydraulic press at all. Mechanical operation accomplished the forming of the work-piece, with the aid of a hydraulic cushion. The evidence was convincing that this patent did not anticipate either of the Ernst patents in suit.

#### No. 1,562,988—Nelson—1925.

Much stress was laid by defendants upon this patent and a working model thereof was introduced in evidence. Without going into detail, let me say that I am convinced by the testimony of the plaintiff's expert and the admissions of the defendants' expert, that the essential cooperative elements of the Ernst patents were not disclosed in the Nelson patent.

#### No. 1,664,487—Rode—1928.

This patent essentially disclosed only a mechanical means for forming the work-piece with a hydraulic cushion for the die. It cannot be taken into account because it was not pleaded in the answer, nor was the plaintiff apprised in advance as required by 35 U.S.C.A. § 69, Aug. 5, 1939, c. 450, § 1, 53 Stat. 1212.

#### No. 1,861,337—Ernst—1932.

Considerable stress was also placed upon this patent as anticipatory and a working model thereof introduced in evidence. The testimony of plaintiff's expert witness convinced me that this patent did not anticipate the patents in suit and furthermore it was before the patent office at the time of the pendency of Ernst's application #2,135,240. J. A. Mohr & Son v. Alliance Securities Co., supra.

#### No. 1,891,121—Thoreson—1932.

Uncontradicted testimony of plaintiff's expert witness was convincing that the Thoreson patent did not anticipate the patents in suit.

#### French Patent No. 542,769—Nappee—1922.

It was admitted by defendants' expert witness that the essential cooperative "means" were not disclosed in this patent and further it was before the patent office at the time of the pendency of Ernst's application No. 2,136,240. J. A. Mohr & Son v. Alliance Securities Co., supra.

Upon the face of none of the claimed anticipatory patents was there a disclosure of the essential combination projected in the patents in suit. Parks v. Booth, 102 U.S. 96, 26 L.Ed. 54; J. A. Mohr & Son v. Alliance Securities Co., 9 Cir., 14 F.2d 799; Skelly Oil Co. v. Universal Oil Products Co., 3 Cir., 31 F.2d 427.

#### Infringement.

Does the defendants' press accomplish substantially the same result, in substantially the same way, or by substantially the same means disclosed in the Ernst patents? Cantrell v. Wallick, supra; Machine Co. v. Murphy, 97 U.S. 120, 24 L.Ed. 935.

There was no substantial controversion by defendants of the contention that all of the claims of the two patents in suit that were relied upon, read upon the defendants' press. If not proving, this at least "suggests" infringement. Geoghegan v. Ernst, 2 Cir., 256 F. 670.

Diagrammatically, by exhibits 25, 26 and 27 plaintiff demonstrated that claims 7, 9 and 11 of patent No. 2,067,265 apply to and read upon the defendants' structure. A like demonstration was made by exhibits 20, 21 and 22 as to claims 7, 8 and 9 of patent No. 2,136,240.

Defendants contend that the various "means" set out in the claims are too broad. However, when interpreted in the light of the specifications, which is proper (Kugelman v. Sketchley, 9 Cir., 133 F.2d 426), the "means" set out in the claims are found to likewise function in substantially the same way in the defendants' device. The evidence convinces me on this point.

One further matter requires comment. The Baldwin Locomotive Works by admission of counsel in open Court was stated to be defending this case; hence the Baldwin Locomotive Works should be and I find it to be estopped by the decision herein. Goodman v. Super Mold Corporation of California, 9 Cir., 103 F.2d 474. Cf. B. F. Sturtevant Co. v. Clarage Fan Co., D.C., 50 F.Supp. 157.

Let judgment be entered for a permanent injunction restraining defendants as prayed for in the complaint and for costs and an accounting of profits and damages. Findings of Fact and Conclusions of Law submitted by plaintiff at the time of filing its brief will be signed unless objections thereto are made by defendants within ten (10) days.