RALPH N. BRODIE CO. et al. v. HY-
DRAULIC PRESS MFG. CO.

No. 10546.

Circuit Court of Appeals, Ninth Circuit.

Aug. 29, 1945.

Rehearing Denied Oct. 15, 1945.

Oscar A. Mellin, of San Francisco, Cal., and Edward A. Hathaway, of Philadelphia, Pa., for appellants.

Toulmin & Toulmin, of Dayton, Ohio (Jack E. Hursh, of San Francisco, Cal., and D. C. Staley and Rowan A. Greer, both of Dayton, Ohio, of counsel) for appellee.

Before MATHEWS, STEPHENS, and BONE, Circuit Judges.

MATHEWS, Circuit Judge.

Appellee (The Hydraulic Press Manufacturing Company) brought a suit against appellants (The Ralph N. Brodie Company and The Pelton Water Wheel Company)[1] and others for infringement of three patents (Nos. 2,067,265, 2,136,240 and 2,167,941) owned by appellee. Answering, appellants pleaded as defenses that the patents were invalid, and that, if valid, they were not infringed. The case was tried by the court without a jury. In the course of the trial, the suit was dismissed as to all de-

---

[1] The Pelton Water Wheel Company was sued as "ABC Company," its true name being unknown to appellee at the time the suit was brought.

fendants except appellants. The court held that claims 7, 9, 10, 11, 14 and 15 of patent No. 2,067,265 and claims 7, 8, 9 and 10 of patent No. 2,136,240 were valid and infringed by appellants and entered a judgment (51 F.Supp. 202) which enjoined such infringement, ordered an accounting of profits and damages and dismissed the suit as to patent No. 2,167,941. From that judgment this appeal is prosecuted.

Appellants say that the court erred (1) in holding that claims 7, 9, 10, 11, 14 and 15 of patent No. 2,067,265 and claims 7, 8, 9 and 10 of patent No. 2,136,240 were valid and (2) in holding that these claims were infringed by appellants.

## I.

Patent No. 2,067,265 was applied for by Walter Ernst (appellee's assignor) on July 19, 1934, and was issued on January 12, 1937. The specifications of this patent stated: "This invention relates to hydraulic presses and, in particular, to such presses arranged for drawing metal blanks into articles of various shapes, the press including means for clamping the metal blank while the drawing operation is taking place." A hydraulic press embodying this alleged invention was described in the specification of this patent.

Patent No. 2,136,240 was applied for by Ernst on April 16, 1936, and was issued on November 8, 1938. The specification of this patent stated: "This invention relates to hydraulic presses, and in particular, to drawing presses." A hydraulic press embodying this alleged invention was described in the specification of this patent.

The press described in the specification of patent No. 2,067,265 and the press described in the specification of patent No. 2,136,240 each contain a pressing plunger;[2] a pressing cylinder[3] containing the head and upper portion of the pressing plunger;, a platen connected to and operated by the pressing plunger; an upper die[4] connected to the platen; a lower die[5] on which is placed a metal blank or work-piece; a pair of clamping plungers;[6] a pair of clamping cylinders,[7] each containing the head and upper portion of one of the clamping plungers; a clamping member connected to and operated by the clamping plungers;[8] means for supplying and conducting pressure fluid to each of the cylinders;[9] means for expelling, releasing and discharging pressure fluid from each of the cylinders; and means for restricting and controlling the flow of pressure fluid to and from each of the cylinders.[10]

Claims 7, 9, 10, 11, 14 and 15 of patent No. 2,067,265 read as follows:

"7. In combination in a hydraulic press, a double-acting pressing plunger, a platen connected thereto, a clamping plunger, a clamping member operated thereby, said platen and said clamping member being adapted to engage one another, and means for restricting the discharge of pressure fluid from around one of said plungers, whereby to maintain said platen and said clamping member in engagement with one another during the motion thereof."

"9. In combination in a hydraulic press, a double-acting pressing plunger, a clamping plunger, means providing inter-flow of pressure fluid between said clamping plunger and one side of said pressing plunger, and valve means adapted to control the flow of fluid with respect to the space around said clamping plunger.

"10. In combination in a hydraulic press, a double-acting pressing plunger, a clamping plunger, means providing inter-flow of pressure fluid between said clamping plunger and one side of said pressing plunger, and valve means adapted to control the flow of fluid with respect to the space around said clamping plunger, said valve means being operated by the motion of one of said plungers.

---

[2] Also called a main plunger.

[3] Also called a main cylinder.

[4] Also called a forming plunger.

[5] Also called a cooperative shaping die.

[6] Also called clamping plunger members.

[7] Also called clamping cylinder members.

[8] The press described in the specification of patent No. 2,067,265 contains a tie member which connects the clamping member to the clamping plungers and releasably interconnects the pressing plunger and the clamping plungers. The press described in the specification of patent No. 2,136,240 contains tie members (rods) which releasably connect the clamping member to the platen, thereby releasably interconnecting the pressing plunger and the clamping plungers.

[9] Including means providing inter-flow of pressure fluid between the pressing cylinder and the clamping cylinders.

[10] Including means for cutting off such flow.

"11. In combination in a hydraulic press, a double-acting pressing plunger, a clamping plunger, means providing inter-flow of pressure fluid between said clamping plunger and one side of said pressing plunger, and valve means adapted to control the flow of fluid with respect to the space around said clamping plunger, said valve means being operated by the motion of said clamping plunger."

"14. In combination in a hydraulic press, a double-acting pressing plunger, a platen connected thereto, a clamping plunger, a clamping member operated thereby, means providing inter-flow of pressure fluid between said clamping plunger and one side of said pressing plunger, and escape valve means associated with said clamping plunger to release the pressure fluid from the space therearound when the clamping pressure thereof reaches a predetermined amount.

"15. In combination in a hydraulic press, a double-acting pressing plunger, a clamping plunger, a platen connected thereto, a clamping plunger, a clamping member operated thereby, means providing inter-flow of pressure fluid between said clamping plunger and one side of said pressing plunger, a tie member releasably interconnecting said pressing plunger and said clamping plunger, and escape valve means associated with said clamping plunger to release the pressure fluid from the space therearound when the clamping pressure thereof reaches a predetermined amount, said tie member being arranged to permit said platen to continue its motion after said clamping member has reached its clamping position."

Claims 7, 8, 9 and 10 of patent No. 2,136,-240 read as follows:

"7. In combination, a pressing plunger, a platen operated thereby, a clamping cylinder in said platen, a clamping plunger in said cylinder, means for supplying fluid to said clamping cylinder, and means responsive to the pressure built up in the clamping cylinder by the motion of said clamping cylinder relatively to said clamping plunger for cutting off said fluid-supplying means from said clamping cylinder whereby the fluid is entrapped and pressure developed by the motion of said platen relatively to said clamping plunger and caused to operate said clamping plunger to clamp the work-piece.

"8. In combination, a pressing plunger, a platen operated thereby, a clamping cylinder in said platen, a clamping plunger in said cylinder, means for supplying fluid to said clamping cylinder, means responsive to the pressure built up in the clamping cylinder by the motion of said clamping cylinder relatively to said clamping plunger for cutting off said fluid-supplying means from said clamping cylinder whereby the fluid is entrapped and pressure developed by the motion of said platen relatively to said clamping plunger and caused to operate said clamping plunger to clamp the work-piece, and a pressure release device for releasing fluid from said clamping cylinder in response to the attainment of a predetermined pressure.

"9. In combination, a main cylinder, a main plunger therein, a platen operated thereby, a forming plunger connected thereto, a clamping cylinder and plunger carried by said platen and movable relatively to one another to generate pressure in response to the motion of said platen to clamp the work-piece during the forming operation, a cooperative shaping die, pressure release means associated with said clamping plunger to release fluid therefrom in response to the attainment of a predetermined clamping pressure whereby to clamp the work-piece with a predetermined force at a predetermined pressure, and fluid conducting means connecting said clamping cylinder with said main cylinder for conducting to said clamping cylinder a portion of the fluid displaced from said main cylinder by the motion of said main plunger.

"10. In combination, a main cylinder, a main plunger therein, a platen operated thereby, a forming plunger connected thereto, a clamping plunger member and a fluid-containing clamping cylinder member arranged to clamp the work-piece during the forming operation, a cooperative shaping die, one of said members being mounted on said platen and the other member being adapted to engage the work-piece, said members being movable relatively to one another to generate pressure for clamping the work-piece in response to the motion of said platen, a pressure release device associated with said clamping cylinder member whereby to clamp the work-piece with a predetermined pressure and to expel the fluid from said clamping cylinder member above said predetermined pressure, and fluid-conducting means connecting said

clamping cylinder member with said main cylinder for conducting to said clamping cylinder member a portion of the fluid displaced from said main cylinder by the motion of said main plunger."

Both patents were regularly issued. Hence both patents and all claims thereof were presumptively valid.[11] Hence the burden of establishing the invalidity of claims 7, 9, 10, 11, 14 and 15 of patent No. 2,067,265 and claims 7, 8, 9 and 10 of patent No. 2,136,240 rested on appellants.[12]

All these claims were for combinations. Appellants alleged, in substance and effect, that these combinations were not new,[13] and that therefore the claims were invalid for lack of novelty. The question thus presented was one of fact.[14] On this question, appellants had the burden of proof.[15]

Appellants alleged, in substance and effect, that the combinations did not involve invention, but were merely the product of ordinary skill, and that therefore the claims were invalid for lack of invention. The question thus presented was one of fact.[16] On this question, appellants had the burden of proof.[17]

On both questions—the question of novelty and the question of invention—the evidence[18] was conflicting. Resolving the conflicts in favor of appellee, the court found that the combinations were new, that they involved invention, and that therefore the claims were not invalid for lack of novelty or for lack of invention. These findings are supported by substantial evidence, are not clearly erroneous and should not be set aside.[19]

Appellants here contend that claims 9 and 10 of patent No. 2,136,240 failed to particularly point out and distinctly claim the combinations therein. described,[20] and that therefore these claims were invalid. The question thus attempted to be raised was not raised in the court below. However, we have considered the question and find no merit in appellants' contention.

We conclude that the court did not err in holding that claims 7, 9, 10, 11, 14 and 15 of patent No. 2,067,265 and claims.7, 8, 9 and 10 of patent No. 2,136,240 were valid.

## II.

Appellant The Pelton Water Wheel Company sold, and appellant The Ralph N. Brodie Company used, a hydraulic press, hereafter called appellants' press, manufactured by Baldwin Locomotive Works, a Pennsylvania corporation.[21] Appellants' press contained a pressing plunger;[22] a pressing

---

[11] Radio Corporation of America v. Radio Engineering Laboratories, 293 U. S. 1, 7–10, 54 S.Ct. 752, 78 L.Ed. 1453; Reinharts v. Caterpillar Tractor Co., 9 Cir., 85 F.2d 628, 630.

[12] See cases cited in footnote 11.

[13] See § 4886 of the Revised Statutes, 35 U.S.C.A. § 31.

[14] Battin v. Taggert, 17 How. 74, 84, 15 L.Ed. 37; Reckendorfer v. Faber, 92 U.S. 347, 352, 23 L.Ed. 719; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 312, 29 S.Ct. 495, 53 L.Ed. 805; American Sales Book Co. v. Bullivant, 9 Cir., 117 F. 255, 258; Parker v. Stebler, 9 Cir., 177 F. 210, 212.

[15] Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct.. 675, 81 L. Ed. 983; Parker v. Stebler, supra; San Francisco Cornice Co. v. Beyrle, 9 Cir., 195 F. 516, 518; Diamond Patent Co. v. S. E. Carr Co., 9 Cir., 217 F. 400, 402; Los Angeles Lime Co. v. Nye, 9 Cir., 270 F. 155, 163; Schumacher v. Buttonlath Mfg. Co., 9 Cir., 292 F. 522, 531.

[16] Thomson Spot Welder Co. v. Ford Motor Co., 265 U.S. 445, 446, 44 S.Ct. 533, 68 L.Ed. 1098; Stoody Co. v. Mills Alloys, 9 Cir., 67 F.2d 807, 812; Reinharts v. Caterpillar Tractor Co., supra; Wire Tie Machinery Co. v. Pacific Box Corp., 9 Cir., 102 F.2d 543, 552; Research Products Co. v. Tretolite Co., 9 Cir., 106 F.2d 531, 534.

[17] Hunt Bros. Fruit Packing Co. v. Cassidy, 9 Cir., 53 F. 257, 259; Reinharts v. Caterpillar Tractor Co., supra; National Nut Co. v. Sontag Chain Stores Co., 9 Cir., 107 F.2d 318, 333.

[18] The evidence consisted of 43 exhibits and the testimony of four witnesses. The exhibits included copies of the patents (Nos. 2,067,265 and 2,136,240) here involved and copies of 17 prior patents. The witnesses included appellee's expert, Arthur M. Greene, Jr., and appellants' expert, Alanson P. Brush.

[19] See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[20] See § 4888 of the Revised Statutes, 35 U.S.C.A. § 33.

[21] Baldwin Locomotive Works defended this action for and on behalf of appellants.

[22] Appellants call this a differential ram.

cylinder [23] containing the head and upper portion of the pressing plunger; a platen [24] connected to and operated by the pressing plunger; an upper die connected to the platen; a lower die on which was placed a metal blank or work-piece; a series of clamping plungers; a series of clamping cylinders, each containing the head and upper portion of one of the clamping plungers; a clamping member [25] connected to and operated by the clamping plungers; tie members (rods) releasably connecting the clamping member to the platen, thereby releasably interconnecting the clamping plungers and the pressing plunger; [26] means for supplying and conducting pressure fluid to each of the cylinders; means for expelling, releasing and discharging pressure fluid from each of the cylinders; and means for restricting and controlling the flow of pressure fluid to and from each of the cylinders. [27]

█ Appellee asserted and appellants denied that appellants' press contained the combinations described in claims 7, 9, 10, 11, 14 and 15 of patent No. 2,067,265 and claims 7, 8, 9 and 10 of patent No. 2,136,-240, and that therefore the sale and use of appellants' press constituted infringement of these claims. The question thus presented was one of fact. [28] On this question, appellee had the burden of proof. [29]

On this question, the evidence was conflicting. Resolving the conflicts in favor of appellee, the court found that appellants' press contained the combinations described in the claims, and that therefore the sale and use of appellants' press constituted infringements of the claims. These findings are supported by substantial evidence, are not clearly erroneous and should not be set aside. [30]

We conclude that the court did not err in holding that the claims were infringed by appellants.

Judgment affirmed.

---

[23] Appellants call this a stationary cylinder.

[24] Appellants call this a main platen.

[25] Appellants call this a clamping platen.

[26] See footnote 8.

[27] Including means for cutting off such flow.

[28] Leeds & Catlin Co. v. Victor Talking Machine Co., supra; Reinharts v. Caterpillar Tractor Co., supra; Nicholl v. Schick Dry Shaver, 9 Cir., 98 F.2d 511, 513.

[29] Fuller v. Yentzer, 94 U.S. 299, 305, 306, 24 L.Ed. 107; Bates v. Coe, 98 U.S. 31, 49, 25 L.Ed. 68; Western Well Works v. Layne & Bowler Corporation, 9 Cir., 276 F. 465, 472; Reinharts v. Caterpillar Tractor Co., supra.

[30] See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.