REFRIGERATION ENGINEERING, Inc. v. YORK CORPORATION.

YORK CORPORATION v. REFRIGERATION ENGINEERING, Inc.

No. 11642.

Circuit Court of Appeals, Ninth Circuit.
June 29, 1948.

Lyon & Lyon, Frederick S. Lyon, Lewis E. Lyon and Charles G. Lyon, all of Los Angeles, Cal., for appellant Refrigeration Engineering.

Meserve, Mumper & Hughes, H. Calvin White and Shirley E. Meserve, all of Los Angeles, Cal. (Alexander C. Neave, Clarence D. Kerr and William J. O'Hearn, Jr., all of New York City, of counsel), for appellant, York Corporation.

Before MATHEWS, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

York Corporation (herein called plaintiff) brought this action in the district court for a declaratory judgment that the McAdam patent, No. 2,219,393, issued October 29, 1940, was invalid and for an injunction restraining Refrigeration Engineering, Inc. (herein called defendant), owner of the patent, from bringing or prosecuting any action charging plaintiff with infringing the patent. Defendant filed an answer which contained a counter-claim (improperly called a cross-complaint) charging that plaintiff had infringed the patent and praying for an injunction against such infringement and for an accounting of profits and damages. Plaintiff filed a reply (improperly called an answer) denying infringement and alleging that the patent was invalid.

There was a trial resulting in a judgment from which both parties appeal.

Plaintiff appeals from that part of the judgment which held that claim 13 of the patent was valid and infringed by plaintiff, enjoined such infringement, dismissed the complaint, awarded costs to defendant, directed that defendant recover damages and attoneys' fees from plaintiff, and ordered an accounting for the ascertainment of such damages and attorneys' fees. Defendant appeals from that part of the judgment which held that claims 1-12 and 14 of the patent were invalid.

The patent relates to an invention of a "defrosting device" employing ordinary "tap-water" from city mains or other source, for removing frost and ice from refrigeration coils designed to be installed and to operate *within* a space employed in the refrigeration of commodities (referred to herein and in the specification and claims of the patent as a "refrigerated space") which "space" is required to be continually maintained at a temperature below the freezing point of water.[1]

"Defrosting," in the refrigeration art, means the removal of frost or ice from "refrigeration coils" which contain a "refrigerant" which chills them and produces therein the low temperatures required in various refrigeration operations. Frost or ice collects on the surface of the coils, its presence serving to "insulate" them and interfere with their function of "refrigeration." This frost and ice must be removed at more or less regular intervals and during the removal period the coils cease to perform their normal function of creating a low temperature. The longer the time employed in defrosting them, the greater the danger that the temperature in the space under refrigeration will rise above the temperature required to be maintained.

As indicated above, the claimed invention was devised and intended to be used within a refrigerated space. As described in the specification, the invention consists of a combination the essential elements of

which are a coil, a spray-head over the coil, means for supplying water to the spray-head, a self-draining conduit leading from the spray-head to a point outside the refrigerated space, a drip pan under the coil and a conduit leading from the drip pan to a point outside the refrigerated space, all of which elements are fully described in the specification.

These elements are combined to form a unit whereby the coil can be defrosted while maintaining within the refrigerated space a temperature below the freezing point of water. This is done by supplying water from a source outside the refrigerated space to the spray-head, whence it is sprayed on the coil, caught in the drip pan and drained therefrom by one of the conduits. Unused water remaining in the spray-head is drained therefrom by the other conduit. By these conduits, all water is removed from the refrigerated space without being frozen and without materially affecting the temperature of such space.

A device embodying the claimed invention is described in the specification. In that device, the coil has fins, a fan is used to blow the air of the refrigerated space over the coil, and an electrically controlled valve is used as a means of supplying water to the spray-head. It is clear, however, from the specification that the fins, the fan and the valve are not essential elements of the claimed invention.

Plaintiff alleged that the patent was invalid "because the applicant therefor [McAdam] was not the original and first inventor of the alleged invention described and claimed therein, but the same, in all its material and substantial parts, was invented, known to and used by others in this country before his alleged invention or discovery thereof; was patented and described in printed publications in this and foreign countries, or more than two years prior to his application for patent; and was in public use and on sale in this country for more than two years prior to his said application." Defendant denied these allega-

---

[1] From the testimony it appears that defendant's patented device and the accused device of the plaintiff, were designed by the parties primarily to be utilized in commercial-type refrigeration installations and not in or as part of small home devices, although the latter use is possible.

tions, and the trial court found that they were untrue. Plaintiff specifies the finding as error.

Defendant concedes that all elements of the claimed invention were old and well known to the refrigeration art prior to such invention. Its position is that McAdam's arrangement and assembly of these old elements has created a new combination which unites these old elements in such manner as to provide or create a new entity divorced from any one element; that in the "composite," or union of all its elements, the effect produced by their joint action is a new, final and combined result in the art of refrigeration never produced before; and that this combination introduced a new function in an old art by producing a new, useful and final effect, result and method which performs an old function in the art of refrigeration in a new and more advantageous way.

An expert witness for defendant testified that: *"In this combination you have a new entity* which brings out a different result and a combined result of all of those elements to produce the final result which makes the thing successful." And again, "Each of the elements is old but in being brought into this particular combination it has provided a new entity which is divorced from any one element *and is the composite of all of those elements* which produced a new result which has never been produced before." (Emphasis supplied)

■ Plaintiff urges that the contentions of defendant (in effect) turn *apparatus claims* into *method claims,* and that method claims were *abandoned* by defendant during the prosecution of the McAdam application and were cancelled, as a result of which the patent is for an apparatus—a mechanical device which consists of a combination of old parts—all in combination with a refrigerated space. It argues that "it was old to use all of these parts in combination with a refrigerated space * * * the whole purpose of the unit was to refriger-ate a space * * * prior patents and prior uses show that such units were so used." While abandonment of method claims is thus suggested argumentatively in plaintiff's brief, no mention is made concerning such an issue in the findings of the court, the statement of points to be relied upon on appeal, or in plaintiff's specifications of error, and the contention will not be considered here. In any event, the expert witness on behalf of defendant testified that *all* of the claims of the patent are appartus claims, and that each of the claims is for *a combination of structural elements.* There is no method claim among them.

Defendant meets plaintiff's contentions with the averment that unless it can be shown that the *combination* is old,[2] it is not open to the attack here made upon it, since the law does not look to the elements or factors of an invented combination as the subject for a patent, but looks only to the combination itself as a unit distinct from its parts. See City of Grafton v. Otis Co., 4 Cir., 166 F.2d 816, 817.

Plaintiff did not, in its pleadings, allege that the patent or any claim thereof was invalid for lack of invention. However, it introduced evidence tending to show that the McAdam combination did not involve invention. Defendant introduced evidence tending to show that it did involve invention, and the court so found. Plaintiff specifies the finding as error.

■■ The court, by its above mentioned findings, determined two questions—the question of novelty and the question of invention. Both were questions of fact. Ralph N. Brodie Co. v. Hydraulic Press Mfg. Co., 9 Cir., 151 F.2d 91; Maulsby v. Conzevoy, 9 Cir., 161 F.2d 165. The findings are supported by substantial evidence, are not clearly erroneous and should not be disturbed. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Ralph N. Brodie Co. v. Hydraulic Press Mfg. Co., supra; Maulsby v. Conzevoy, supra.

---

[2] Regarding anticipation as against a combination—a "unit" distinct from its parts see Yesbera v. Hardesty Co., 6 Cir., 166 F. 120, 125; The Corn Planter Patent, 23 Wall. 181, 90 U.S. 181, 221, 222, 225, 23 L.Ed. 161; Topliff v. Topliff, 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed. 658; Crowell v. Baker Oil Tools, 9 Cir., 153 F.2d 972, 976.

The patent contains 14 claims. As indicated above, claim 13 was held valid and infringed, and claims 1-12 and 14 were held invalid. Plaintiff specifies as error · the holding as to claim 13.

Claim 13 reads: "In combination with a refrigerated space, a coil adapted for periodic defrosting, a spray-head positioned to distribute water over said coil for defrosting thereof, a fan to move air of said space over said coil adapted to be discontinued during defrosting periods whereby the air of said space does not rise above the freezing point of water during the defrosting period, a drip pan disposed below said coil to receive water and ice gravitating from said coil, a self-draining conduit leading from said drip pan to points remote from said space, and an inclined water supply conduit leading from a point remote from said space to said spray-head; said water supply conduit at said remote point provided with an opening normally open to the atmosphere whereby the conduit and spray-head respectively are self-draining, and means for periodically supplying water to said supply conduit during period when said fan is inoperative."

Thus claim 13 describes a combination which includes all essential elements of the invention—a coil, a spray-head, means for supplying water to the spray-head, a self-draining conduit leading from the spray-head to a point outside the refrigerated space, a drip pan under the coil and a self-draining conduit leading from the drip pan to a point outside the refrigerated space. We therefore agree with the trial court that claim 13 is valid.

█ The trial court "concluded" that plaintiff had infringed claim 13 by manufacturing and selling a refrigeration unit described in a stipulation of the parties. (Exhibit CC.) Plaintiff says that the court did not make any finding of fact to support this "conclusion" and erred in failing to make such a finding. Actually, this so-called conclusion was a finding of fact. It was error to call it a conclusion of law, but the error does not require reversal of the judgment. Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 99 F.2d 1; Minnesota Mining & Mfg. Co. v. Coe, 75 U.S.App.D.C. 131, 125 F.2d 198; Smith v. Fletcher, 80 U.S.App.D.C., 263, 152 F.2d 20.

Plaintiff has sought no relief from the stipulation referred to in the preceding paragraph. It admits sale by plaintiff of its accused unit. To the stipulation was attached, as exhibits, a set of schematic drawings which fully delineated the structure, functions, and mode of operation of plaintiff's refrigerating device or unit. Defendant produced an expert witness who testified at length, employing a chart in colors, accompanied by an explanatory text, which chart presented in side-by-side detail, the construction, elements and mode of operation of the refrigerating units of both parties. Plaintiff agreed that this chart (an exhibit) correctly portrayed its unit.

Defendant's expert witness testified that plaintiff's so-called "York unit" included each and every element of defendant's device; operated in the same way to produce the same result within a refrigerated space claimed for defendant's device, and that in the York device there was a substantial identity of structure with defendant's device. Regarding what constitutes sufficient similarity between devices for there to be infringement, See: City of Grafton v. Otis Co., supra, 166 F.2d at pages 820, 821, and Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10 Cir., 97 F.2d 945, 946. Regarding methods of comparison between structures at trial and construction on appeal, See: United States v. Esnault-Pelterie, 303 U.S. 26, 30, 31, 58 S.Ct. 412, 82 L.Ed. 625; Hanovia Chemical Co. v. Buttrick Co., 1 Cir., 127 F.2d 888, 889; Ralph N. Brodie Co. v. Hydraulic Press Mfg. Co., supra; Stuart Oxygen Co. v. Josephian, 9 Cir., 162 F.2d 857, 859.

Plaintiff contends that defendant's device (described in claim 13) is incomplete without the element of "a refrigerated space," as a part thereof, and that, since plaintiff does not manufacture or sell a refrigerated space, there is no infringement "unless an equivalent element is supplied." While this argument is interesting, it is not persuasive. The stipulation (above referred to) and the evidence clearly reveal that the accused device of plaintiff was de-

signed, built and advertised *to operate within,* and in conjunction with, a refrigerated space in the same manner as the device of the defendant.

Claim 13 contains the phrase "In combination with a refrigerated space," but this does not mean that a refrigerated space is an element of the invention. Instead, it merely indicates where the invention is intended to be used. We take it that the claim might with equal propriety have read "to operate in conjunction with" or "in association with" a refrigerated space, or perhaps with more accuracy, "within" a refrigerated space. That the described combination of elements performs its coil-defrosting function only when operating "in combination with a refrigerated space" does not militate against the patentability of defendant's claim or absolve plaintiff's device of its infringing character.

A patent claim for an oxygen-supplying combination device designed to be automatically operative only "in, or within the stratosphere" most certainly would not entail the necessity of claiming the stratosphere itself as one of the necessary physical elements of such a device. "Interstellar space" is not a saleable commodity, yet a device designed for the sole purpose of performing its claimed functions "within" and only within a certain specified area of such a space would certainly possess elements of novelty and utility. To use a more mundane analogy, one whose patent claim or claims cover some new mechanical device for use *only* "in combination with" the previously known internal combustion engine, could not claim, as such, the antecedent engine to which it necessarily must be affixed in order to function. To say that plaintiff produces a defrosting unit but does not "sell" along with it the "refrigerated space" within which alone it must operate, is to announce the obvious, but this proposition has no such significance as plaintiff attaches to it.

Neither plaintiff nor defendant makes or sells a refrigerated space in conjunction with its product. The evidence abundantly supports the conclusion that what both parties *do* manufacture and sell is a device comprised of the elements set forth in claim 13 of defendant's patent and faithfully reproduced by plaintiff. Plaintiff's argument based upon the fact that it purveys no "refrigerated space" is ingenious but fruitless.

The finding that plaintiff infringed claim 13 was based, in part, on the stipulation above referred to, is amply supported by the stipulation and other evidence, is not clearly erroneous and should not be disturbed.

At the close of all of the evidence, plaintiff moved to amend its complaint to add the following charge: "Defendant is barred from the relief sought in the McAdam patent because it has misused the patent in an effort to control competition on unpatented devices."

Plaintiff offered this motion to make the pleadings conform with what it asserted to be the proof. Actually, there was no proof that defendant had misused the patent. The motion was properly denied.

Plaintiff urges that costs and attorneys' fees should not have been allowed defendant. The lower court awarded costs to defendant and directed a special master to determine reasonable attorneys' fees to be allowed defendant. It is provided by statute that in patent cases the complainant shall be entitled to costs, as may be fixed by the court, and that the court may in its discretion award reasonable attorneys' fees to the prevailing party. 35 U.S.C.A. § 70. We cannot say that the lower court abused its discretion in the award of costs, and we obviously cannot hold improper an allowance of attorneys' fees which as yet have not been determined.

Defendant specifies as error the holding that claims 1-12 and 14 are invalid. The court held these claims invalid "as not defining the entire invention of the McAdam patent," meaning, obviously, that the combinations described in these claims did not include all essential elements of the invention. The combinations described in claims 1-9, 12 and 14 do not include all essential elements of the invention.[3] We

---

[3] The combinations described in claims 1, 3 and 5 have no spray-head, no drip pan and only one conduit. The combinations described in claims 2, 4 and 6 have

therefore agree with the trial court that claims 1-9, 12 and 14 are invalid.

We do not agree that claims 10 and 11 are invalid, for the combinations therein described include all essential elements of the invention.[4] We therefore hold claims 10 and 11 valid.

The judgment is modified so as to hold claims 10 and 11 valid and, as thus modified, is affirmed.

---

no spray-head. The combinations described in claims 7 and 8 have only one conduit leading to a point outside the refrigerated space. The combinations described in claims 9, 12 and 14 have no drip pan and only one conduit.

[4] Claim 10 reads: "In combination with a refrigeration space, a coil adapted for periodic defrosting, fins arranged on said coil to provide vertical channels extending from end to end thereof for gravitational flow of water over said fins and coil and channels extending from face to face thereof for flow of air; a spray head positioned immediately above said coil coextensively of the upper plane thereof, a drip pan below said coil to receive water draining from all of said fins down through the vertically extending channels; a fan at one face of said coil normally forcing air through the corresponding channels and capable of being discontinued during defrosting periods; said fins, said spray head and said drip pan respectively cooperating to substantially prevent thermosyphonic flow of air over said coil and fins when the fan is discontinued whereby the air of said refrigerated space does not rise above the freezing point of water during the time required for defrosting said coil and fin surfaces, a self-draining conduit leading from said drip pan to points exteriorly of said space, a self-draining conduit leading from said spray head to a drain outlet exteriorly of said space acting normally to fully drain said spray head, and valvular means external to said space operable during discontinuance of operation of said fan to close said drain opening and to admit water to said spray head; said valvular means subsequently operable before operation of said fan to discontinue supply of water and to again open said drain outlet."

Claim 11 reads: "The combination as in claim 10 and in which said conduits are composed of a slow-heat-conducting low-specific-heat material."