ORIENTAL FOODS, Inc., a corporation, Appellant,

v.

CHUN KING SALES, Inc., and Jeno F. Paulucci, Appellees.

CHUN KING SALES, Inc., and Jeno F. Paulucci, Appellants,

v.

ORIENTAL FOODS, Inc., a corporation, Appellee.

No. 15104.

United States Court of Appeals Ninth Circuit.

May 16, 1957.

Harris, Kiech, Foster & Harris, Ford Harris, Jr., Walton Eugene Tinsley, Los Angeles, Cal., for appellant.

Lyon & Lyon, Lewis E. Lyon, Robert Douglas Lyon, Los Angeles, Cal., Williamson, Schroeder, Adams & Myers, Everett J. Schroeder, Minneapolis, Minn., for appellee.

Before STEPHENS, FEE and BARNES, Circuit Judges.

BARNES, Circuit Judge.

The plaintiff Chun King Sales, Inc. sought an injunction and damages for patent infringement and unfair competition. [28 U.S.C.A. § 1338(a) and (b)] The patent involved is No. 2,679,281, issued on May 25, 1954, to Jeno Francis Paulucci. The defendant denied infringement, challenged the validity of the patent, and, in a counterclaim, asked for a declaration of invalidity. While the original pleadings as to the cause of action for infringement related to all three claims of the patent in suit, the plaintiff, at the trial, restricted itself to a charge of infringement of Claim 1 only.

Defendant Oriental Foods appeals from that portion of the judgment estab-

lishing the validity of plaintiff Paulucci's patent, and defendant's infringement thereof. Plaintiffs Paulucci and Chun King Sales, Inc., appeal from that portion of the judgment denying relief from defendant Oriental Foods' alleged unfair competition.

## I.

### Validity and Infringement.

We adopt the statement describing Claim 1 appearing in the Opinion of the District Court, with the addition of the portion italicized, which was inadvertently omitted from the Transcript:

"The object of the patent in suit is to join cans so that canned foods might be sold together and is on 'a method and means for securing cans together in end-to-end relationship.' Claim 1 describes it:

"'1. The method of securing two cans together said cans having beaded ends protruding beyond their side walls, comprising (1) aligning said cans in end-to-end relationship with adjacent end beads of said cans abutting each other; (2) stretching a portion of a slightly resilient sticky tape and applying said portion of said tape over portions of the abutting beads and adjacent side walls of said cans while said tape is in a stretched condition to secure said cans together; (3) pulling on the portion of said tape not secured to said can in a direction substantially tangential to the periphery of the cans to place same in a stretched condition; (4) *and rotating said cans on their longitudinal axes, while said tape is in said stretched condition* to cause said tape to be applied and adhere to the remainder of the periphery of said beads and adjacent side walls of said cans.' [for convenience of reference, we have numbered the four elements of the claim.]" [136 F.Supp. 661.]

The District Court in its opinion, correctly stated that "the scope of the claim is narrow," but that "it represents invention over the prior art," insofar as element (2) is concerned. The court then found no anticipation in prior art, because "there is no method in either [the Nifong or Johnson patents] [1] for applying tension to or stretching the tape either before or after application, in order to cause it to pass around an irregular contour so as to secure, in effect, a welding as set forth in the patent in suit." The court found some prior use,. but held that this was experimental and unsuccessful anticipation of the invention, and that it did not amount to a public use.

The letters patent discloses a "method" or "means" or "process" patent. It involves the aggregation of two previously known elements: (1) a 90° angle iron, large enough to hold two or more tin cans longitudinally to each other, resting on the point of its angle, and being secured to a platform, with a "stop" at one or both ends of the angle iron; and, (2) a sticky, resilient tape rolled onto the cans from a tangentially right angle position, which tape is held by hand, or by a tape holder not secured to the plat-' form, or held by both. Claim 1 does not refer to the tape holder, nor make it a part of the claim in any way. The tape holder may be of any type, or none need be used. If a holder is not used, the stretched condition of the severed tape is accomplished wholly by manually pulling on the tape at right angles to the cans. If the tape is still on the roll, the stretched condition is created by pulling the holder away from the cans. In either event, after the cutting of the tape, tension required in the stretched tape can only be applied by manually stretching the tape.

The firmness by which the two tin cans are "welded" together by the use of the cellophane or other "sticky, resilient tape" depends, as shown in Figure 5 of the patent, upon how well or how closely the sticky, resilient tape when applied follows the contours of the can's beading

---

1. Prior Art Patents, defendant's Exhibit K and Exhibit S.

and affixes itself to the beading and, as well, to such portion of the adjacent side walls and/or the labels on said cans, immediately adjoining the beads, as the width of the tape will permit.

If the length of tape is not under tension, a "ruffling" of the tape on the cans takes place and the bond is not as solid, permitting a "play" by the cans, making them more difficult to handle, and easier for an unscrupulous merchandiser to separate and sell separately for a larger combined price.

Claim 1 requires a stretching of the sticky, resilient tape. The word "tension" is not mentioned in the claim. Neither the amount of tension nor the force of the pull is described or defined in the claim. The process or method patented embraces the same results as though two cans were held solidly and longitudinally together in one hand while a piece of cellophane was tightly stretched around the adjoining beads and the adjacent side walls of the can with the other hand. To do this, we must assume the holder has sufficient strength, agility and eyesight to accomplish the desired result.

Ordinary "sticky, resilient," cellophane tape was used manually to accomplish this before the "machine" in question was created, and with the "machine" thereafter. This tape is described as any "pressure sensitive tape with a rubber type adhesive. It requires no activator such as water." Witnesses testified they had seen such cellophane tape used in tying two cans together, from 1944 on.

Holding circular objects desired to be wrapped or tied longitudinally together by manual pressure, or in a trough or against an obstacle on a table, while rolling them, is as old as the art of wrapping packages, coins or any cylindrical objects. Hand taping of cans was done by plaintiff company in 1949, 1950 and 1951 and perhaps as early as late 1948. The plaintiff Chun King Sales first affixed cans together longitudinally by tape in 1948. Thousands of cans so taped were sold by plaintiff in 1949. Chun King Sales taped many cans together by hand in 1949. Such taped cans were a sizable part of Chun King Sales in 1950. The patented "machine" was first used in August of 1951. The application for patent was filed on May 14th, 1952, and the patent was issued May 24th, 1954. The accused machine was acquired by the defendant on May 3rd, 1954, prior to the issuance of the patent in suit. It is stated by the inventor that the basic difference in the use of the tape prior to the patented machine and the use of the tape after the patented machine was that the machine produced more tension on the tape.[2] Before the use of the patented device, after affixing the tape, tension was created by the hands of the taper, stretching the tape. By the machine, the tension was again created by the hands of the taper holding first the dispenser and next the end of the tape at a sufficient distance and with sufficient pull away from the cans to stretch the tape.

We think any use of cellophane tape demonstrates beyond doubt that after the tape is affixed to whatever objects it is sought to hold together, *some* degree of tension must be used to stretch the tape, otherwise it ruffles and handles less efficiently than if tension were used. Thus the device serves to accomplish no more than is accomplished by a careful manual application of the tape.

Our first concern is properly with the validity of the patent allegedly infringed. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644. We think this device fails to meet the strict standards set up by the Supreme Court with respect to patents made up of new combinations of old elements. The basic reasoning underlying the unanimous decision of the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 129, 95 L.Ed. 162, requires us to reverse the decision of the District Court. There

2. Tr. p. 199.

**912**

the Supreme Court found the patents invalid, despite a finding by both the District and the Circuit Courts* that the patents were valid as constituting invention. There as here, the lower court relied to some degree on a wide commercial success. There as here, the District Court found a result in excess of the accumulation of results of the individual elements of the claim. In the Atlantic & Pacific case, the Court said:

"While this Court has sustained combination patents, it never has ventured to give a precise and comprehensive definition of the test to be applied in such cases. The voluminous literature which the subject has excited discloses no such test. It is agreed that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention. In course of time the profession came to employ the term 'combination' to imply its presence and the term 'aggregation' to signify its absence, thus making antonyms in legal art of words which in ordinary speech are more nearly synonyms. However useful as words of art to denote in short form that an assembly of units has failed or has met the examination for invention, their employment as tests to determine invention results in nothing but confusion. The concept of invention is inherently elusive when applied to combination of old elements. This, together with the imprecision of our language, have counselled courts and text writers to be cautious in affirmative definitions or rules on the subject.

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation,

perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' To the same end is Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334, and Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned, and there is nothing to indicate that the lower courts scrutinized the claims in the light of this rather severe test. * * * Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly. * * *."

* 78 F.Supp. 388; 6 Cir., 179 F.2d 636.

It would seem obvious to a person having ordinary skill in the art, that putting tension on, or stretching, after affixing, but before further applying, the sticky resilient tape would produce a better bond on surfaces of limited space than a loose application of such tape. A taut string holds a package tighter than a loose string.

"A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made." 35 U.S.C.A. § 103.

■ The mere fact that the device may make the wrapping of the cans easier to accomplish does not, in and of itself justify a claim of invention. As the District of Columbia Circuit held in a recent decision:[3]

"A mere advance in efficiency and utility is not enough to convert a non-inventive aggregation into a patentable combination.";

citing the Kwikset Locks, Inc., v. Hillgren case, 1954, 210 F.2d 483 of this Circuit.

■■ The standard of invention is written into the Constitution. The Supreme Court has held that the determination by the trial court of the question of invention need not be accorded the respect given ordinary findings of fact. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, concurring opinion, 340 U.S. at pages 155–156, 71 S.Ct. at pages 131–132. See also Crest Specialty v. Trager, 341 U.S. 912, 71 S.Ct. 733, 95 L.Ed. 1349, where the Supreme Court, by per curiam opinion, summarily held invalid a patent previously upheld by the district and circuit courts.[4] This Court has only recently reaffirmed its long held position that the question of novelty and invention is one of fact as to which the conventional clearly erroneous test is applicable. Hall v. Wright, 9 Cir., 240 F.2d 787.[5] We are not disposed to modify our statement of the test applicable on appellate review. This is not a case involving disputed evidence or the credibility of witnesses. The prime evidence is documentary, and is before this Court. Under such circumstances we have a greater discretion in deciding the validity of the patent in question. Sales Affiliates, Inc., v. National Mineral Co., 7 Cir., 172 F.2d 608. We believe that the patent involved in the instant cause rightfully belongs, to use the words of Justice Douglas, among the "list of incredible patents which the Patent Office has spawned." 340 U.S. at

3. Consolidated Trimming Corp. v. London, 1957, 99 U.S.App.D.C. 213, 239 F.2d 33, 36.

4. In the Crest Specialty case, the Circuit Court had reasoned thus (7 Cir., 184 F.2d 577, at p. 579): "Here the [District] court heard the testimony of a number of witnesses, including that of an expert. It expressly found the expert testimony, in certain respects, unworthy of credit. It saw demonstrations of the various devices in court. It passed upon the credibility of the witnesses. It acquired the knowledge that comes from practical demonstration of the two devices. Finally, it made its findings and conclusions of novelty, utility, patentable invention and infringement. To declare them clearly erroneous would be to overturn the trial court's decision upon controverted evi-

dence and to usurp its function of passing upon the credibility of witnesses; this, under the authoritative decisions cited, we are not permitted to do."

5. Cf. Coleman Co. v. Holly Mfg. Co., 9 Cir., 233 F.2d 71. There we held that it was "fair to add that it [the patent in question] certainly lacks any of the hall-marks of a so-called 'gadget' patent concerning which there has been critical comment from time to time." (p. 80). Patent validity is a question of fact. Accord: Lane-Wells Co. v. M. O. Johnston Oil Field Service Corp., 9 Cir., 181 F.2d 707; Faulkner v. Gibbs, 9 Cir., 170 F.2d 34; Refrigeration Engineering, Inc., v. York Corp., 9 Cir., 168 F.2d 896; Maulsby v. Conzevoy, 9 Cir., 161 F.2d 165; Ralph N. Brodie Co. v. Hydraulic Press Mfg. Co., 9 Cir., 151 F.2d 91.

244 F.2d—58

page 158, 71 S.Ct. at page 133. It is a trifling device at best. It makes no substantial contribution to the advancement of the arts. And certainly it lacks that "flash of genius" that the patent laws seek, if not require.[6]

The words of Justice Bradley in Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438, are especially apt:

"It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufacturers. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

As Justice Douglas stated in his concurring opinion in the Great Atlantic & Pacific Tea Co. case,

"The attempts through the years to get a broader, looser conception of patents than the Constitution con-

templates have been persistent. The Patent Office, like most administrative agencies, has looked with favor on the opportunity which the exercise of discretion affords to expand its own jurisdiction. And so it has placed a host of gadgets under the armour of patents—gadgets that obviously have had no place in the constitutional scheme of advancing scientific knowledge.

\*　　\*　　\*　　\*　　\*

"The fact that a patent as flimsy and as spurious as this one has to be brought all the way to this court to be declared invalid dramatically illustrates how far our patent system frequently departs from the constitutional standards which are supposed to govern." 340 U.S. at pages 156, 158, 71 S.Ct. at page 132.

We conclude that the Paulucci patent cannot be sustained. Placed aside the Constitutional criteria for invention, this device does not measure up. In coming to this conclusion, we follow Kwikset Locks, Inc., v. Hillgren, supra, having in mind Coleman Company v. Holly Mfg. Co., 9 Cir., 1956, 233 F.2d 71, 80.

Our determination that there has been no invention makes it unnecessary for us to consider the questions of prior art, prior use, or file-wrapper history of the Paulucci patent (with particular reference to proposed Claim 4, and appellants' admissions in support thereof, restricting the scope of Claim 1).

However, we feel we should state that even if we were to agree that there was invention, we have grave doubts if the trial court's findings, No. 16 and 17, are supported by the evidence.[7]

6. Cf. Schram, Frederick B.: The Relationship of the Patent Act of 1952 to the Antitrust Laws. 23 Geo. Washington Law Review 36, 39–47. Pacific Contact Laboratories v. Solex Laboratories, 9 Cir., 209 F.2d 529, 532.

7. Finding 16: "Defendant has failed to establish any instance of prior knowledge or invention of the method disclosed and claimed in the Paulucci patent No. 2,679,-281, nor any solution of the problem in this art first solved by Jeno F. Paulucci."

Finding 17: "All prior attempts at a solution to the problem by both plaintiffs and defendant prior to the invention of Paulucci proved a failure and were abandoned."

There is uncontradicted evidence that during the years 1949, 1950 and 1951 (prior to the invention) the Chun King Sales, Inc., had purchased from various manufacturers in excess of 4,000,000; 24,000,000; and 22,000,000 inches respectively of sticky, resilient tape. This

## II.
## Unfair Competition.

We next consider the trial court's ruling that there was no proof of unfair competition. Plaintiffs make two contentions. First, that the District Court applied an erroneous standard in determining whether or not the similarity in the size, shape, design and arrangement of cans sold by defendant constituted unfair competition, and second, this similarity appearing on the face of the cans is in and of itself conclusive proof that the defendant is guilty of unfair competition.

We find no merit in either contention. The District Court correctly tested plaintiffs' claim by whether or not there was a reasonable likelihood that the similarity in cans would mislead or confuse an appreciable number of prospective purchasers. The purchasers considered are not limited to the discriminating. They include the casual as well as the discerning buyer.[8] On the other hand, the likelihood of confusion cannot be measured by the effect of the similarity on the rankly careless and unconcerned. To do so would place too great a burden on innovation and change in the manufacture and merchandising of commercial products. A reading of the District Court's opinion as a whole shows that these guideposts were followed.

There is no evidence of actual confusion in the record; evidence that is usually offered in cases of this kind. Plaintiffs ask us to hold that the similarity on the face of the cans clearly establishes unfair competition. We have examined closely the numerous exhibits. A side by side comparison of Oriental's latest use of colors (Exhibits 6, 6A, 7, 7A, 8, 8A, 9, 9A, 10, 10A) indicates that the color code used by Oriental closely follows Chun King's code. But, as the District Court points out, there the similarity ends.

"There is no limitation or simulation of the lettering, the form, the script, scrolls or any of the symbols used by the plaintiff (Chun King)."

Thus the District Court was confronted with a partial similarity, primarily in colors used in a "color code," and in vignettes picturing in color the foods within the cans; otherwise, there existed considerable dissimilarity. The court relied not only on the "tout ensemble," but also considered the fact that defendant Oriental Foods preceded the plaintiff in the field, and in its use of "distinctive identifying symbols singly and in combination" and in some use of color codes, (on both can and box labels) such use having occurred *before* the plaintiffs' use thereof. American Chicle Co. v. Topps Chewing Gum, 2 Cir., 208 F.2d 560. The "deliberate purpose" theory raised therein, and in Miles Shoes v. R. H. Macy & Co., 2 Cir., 199 F.2d 602, 603, is therefore not applicable here. A full description of typical exhibits appears in the opinion below, Chun King Sales v. Oriental Foods, D.C., 136 F.Supp. 659. It would be useless to repeat those details. It suffices to say that we are satisfied no error was committed in the resolution of this factual issue.[9]

It is entirely possible that different triers of fact might come to different conclusions on these facts but we cannot say it was clearly erroneous for the District Court here to come to the conclusion that no unfair competition existed. Such a judgment is supported by the court's findings, and they in turn are supported by the evidence.

amount was sufficient to bind together 600,000 large size cans in 1949; 3,500,-000 in 1950; and more than 3,000,000 in 1951, if we assume the cellophane was used in the same years in which it was purchased. Purchases of such tape were made sixteen to thirty times each year. We do not believe such extensive use of tape on products going to the market can be considered purely experimental, nor that such wholesale use of such tape can be characterized as "a failure," when its use was never abandoned.

8. McLean v. Fleming, 96 U.S. 245, 24 L. Ed. 828; Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568.

9. Cf. Pagliero v. Wallace China Co., 9 Cir., 198 F.2d 339.

The holding of the District Court that Claim 1 of Letters Patent No. 2,679,281 is good and valid in law (Paragraph 2 of the Judgment), is reversed, and the cause remanded with directions to enter a judgment declaring the patent invalid on the counterclaim, and setting aside that portion of the judgment relating to infringement, injunctive relief, an accounting, and damages.

The judgment is affirmed as to the lack of unfair competition.

Reversed, in part, and affirmed, in part.