Bernard H. STAUFFER, Appellant,

v.

SLENDERELLA SYSTEMS OF CALIFORNIA, Inc., a corporation, Appellee.

No. 15418.

United States Court of Appeals Ninth Circuit.

Nov. 15, 1957.

Lyon & Lyon, Charles G. Lyon, Los Angeles, Cal., for appellant.

Harris, Kiech, Foster & Harris, Ford Harris, Jr., Newlin, Tackabury & Johnston, Hudson B. Cox, Los Angeles, Cal., for appellee.

Before FEE, BARNES and HAMLEY, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Stauffer brought a suit for infringement of Patent No. 2,240,679 against Slenderella Systems of California, Inc. The principal defenses were non-infringement and lack of validity of the basic patent by reason of the advances shown in the prior art. The patent in suit was granted on a "Muscle Relaxing Machine," which purportedly relates to "mechanical means to soothe, relax, and strengthen certain of the muscular areas of the human body * * * by massage of certain of the muscles of the spinal tract." A number of prior patents were introduced for the purpose of showing the prior art. After a hotly contested trial the District Court entered a judgment finding Claim 1 of the patent in suit invalid for lack of invention in view of the prior art. There was no determination as to whether there was infringement in view of this holding. Although the patent contains two claims, Stauffer at the trial withdrew the charge of infringement of the second.

 This Court has consistently held that the question of validity of a claim of a patent is one of fact.[1] The

1. Oriental Foods, Inc. v. Chun King Sales, Inc., 9 Cir., 244 F.2d 909; Hall v. Wright, 9 Cir., 240 F.2d 787, 790; Schmeiser v. Thomasian, 9 Cir., 227 F.2d 875; Jacuzzi Bros. v. Berkeley Pump Co., 9 Cir., 191 F.2d 632; Leishman v. General Motors Corporation, 9 Cir., 191 F.2d 522, certiorari denied 342 U.S. 943, 72 S.Ct.

556, 96 L.Ed. 702, rehearing denied 343 U.S. 921, 72 S.Ct. 675, 96 L.Ed. 1334, 343 U.S. 952, 72 S.Ct. 1040, 96 L.Ed. 1353; Refrigeration Engineering v. York Corporation, 9 Cir., 168 F.2d 896, certiorari denied 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406; Maulsby v. Couzevoy, 9 Cir.,

findings of a judge upon novelty, utility and invention are entitled to great weight when made after trial of these issues. This Court will respect such findings unless the record shows these to be "clearly erroneous." The findings presented to us are impeccable as to wording and content, and the issue of invention is clearly raised. Stauffer relies upon certain expressions of the trial judge in the record to mean that the patented device was simple and that an ordinary mechanic, if faced with the problem, would have come up with a like solution and upon the statement that the judge could not see a great deal of similarity between the device in suit and the patented articles pleaded by Slenderella, although these had some things in common to challenge the decision. The formal findings have no such defect. The argument of appellant is that simplicity is the essence of invention. For this proposition, numbers of cases are cited. But there is a common fallacy here. So common, indeed, that the medieval logicians gave it a name. All inventions may involve simplicity. But simply because a device is simple does not prove that it involves invention. The fact that the trial court indicated that none of the prior patents anticipated the device of Stauffer did not prevent him from considering the progress in the art thereby exemplified to determine whether invention were involved.

Anticipation is strictly a technical defense. Unless all of the same elements are found in exactly the same situation and united in the same way to perform the identical function in a prior pleaded patent, there is no anticipation.

The advances in the prior art may be such that, although there is no strict anticipation and even though the devices involved may not be similar, a trained mechanic would, if presented with the problem, solve it without difficulty.[2] The court found affirmatively that the Stauffer device did not contain invention.

There was a collateral question in the case introduced under the theory that imitation of a device is a pragmatic test of invention and that commercial success of a device is evidence of utility, and an inference of the existence of invention may also be found therein. This Court and other courts have used these factors as some evidence to sustain a finding of fact of patentability.[3]

However, it is doubtful how much evidence of imitation and commercial success of the patented device appears in this record. Stauffer operates a system providing for reducing treatments for women, which has had great commercial success. But the machines used in the reducing salons are not exact reproductions of the device patented and may perhaps not be covered by the terms of the instrument.

Slenderella also operates a nation-wide system of the same type. Stauffer complains that Lawrence Mack, the manager

---

161 F.2d 165, certiorari denied 332 U.S. 791, 68 S.Ct. 99, 92 L.Ed. 373; Ralph N. Brodie Co. v. Hydraulic Press Manufacturing Co., 9 Cir., 151 F.2d 91.

2. "A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C.A. § 103. Oriental Foods, Inc. v. Chun King Sales, Inc., 9 Cir., 244 F. 2d 909; Schmeiser v. Thomasian, 9 Cir., 227 F.2d 875.

3. "Commercial success may be taken into consideration in determining validity. The trend * * * is to use it as a makeweight only 'where the patentability question is close.' * * *

"* * * it is not a criterion * * * in determining whether there was invention." Pointer v. Six Wheel Corporation, 9 Cir., 177 F.2d 153, 156, and cases cited therein.

"But commercial success without invention will not make patentability." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corporation, 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162.

of his Chicago salon, operated another salon of the Slenderella Systems in the same building, and subsequently, with the ideas thus pirated from Stauffer, set up the competing system, which has also had outstanding commercial success. Perhaps the system has been copied by Slenderella. Perhaps the imitation of the methods of the system may have involved bad faith by Mack, as Stauffer contends. We do not decide either of these suppositious issues. The trial court did not decide these. Neither issue is pertinent to this litigation. Slenderella does not make or vend any machines. It is true that, in the operations of its salons, Slenderella does use certain devices which Stauffer contends infringe his patent. But the trial court did not decide that issue. And we do not consider it. But there is no evidence of either commercial success confined to the Stauffer device distinguished from the system or of conscious imitation by Slenderella of a validly patentable construction.

The sole question before this Court is whether the finding of fact by the trial court, that the Stauffer device is not patentable on the ground that it does not involve invention in view of the prior art, is "clearly erroneous." We conclude that the findings are sustained by the evidence and that the judgment must be affirmed.

Couches, such as those of Stauffer, to provide mechanical massage were old in the art long before his patent was granted. A whole series of patents for accomplishing this result are in evidence. The earliest dates from 1869, but all these will not be reviewed in this opinion. Suffice it to say that each of the mechanical elements were old and had been used in the prior art to accomplish substantially the same result.

Parker, No. 1,978,223, shows a treatment table with an open slot in its top through which extends six pairs of vertical supports carrying curved body applicators upon their upper ends. All of these supports are pivoted near their lower ends and are connected with a pitman rod, which is reciprocated through a cam and eccentric by a belt driven by a motor. When the motor is operated, the supports oscillate in simple harmonic motion on these pivots to move in a small arc from one side of the vertical to the other and back.

The Stauffer patent shows a table upon which the patient lies with one oscillatable "seat" applicator or paddle engaging the portion of the body to be massaged. The applicator is carried on a pair of upright supports which are rotated through half an arc on pivots by pitman rods, which are moved back and forth by cams, linkage and pulleys driven by an electric motor.

The six applicators of the Parker machine move from one side of the vertical through the vertical and on to the other side of the vertical. In the original Stauffer application, the applicators followed a similar course. The specification was amended to limit the movement to an arc on one side of the vertical.

Two more changes were made in the amended specification. The original clause is set out here with the amendments in brackets:

"* * * a slot-way * * * through which a vertically directed and oscillatable support for a [single] flat rectangular applicator is adapted to [tiltingly] move * *."

Thus there are four possible deviations from the Parker patent. The latter has six applicators, not a single. Each of these moves to the other side of the vertical. The applicators of Parker are curved and not flat and rectangular. The applicators of Parker do not "tiltingly move." These elements have as much upward movement as the applicator in the Stauffer patent. While in a formalistic sense, with emphasis on semantics, there are differences which explain the granting of the Stauffer patent and perhaps prevent the use of Parker as anticipation, it appears probable that the elements of Stauffer performed the same function in substan-

tially the same way and by the same means as those which were equivalent.

The Stauffer patent recites:

"The machine of this invention relates to mechanical means to soothe, relax, and strenghten certain of the muscular areas of the human body * * * by massage of certain of the muscles of the spinal tract."

It consists of a couch which has a slot-way through which the single applicator is vertically directed.

Parker shows an apparatus similar to a couch, which has a slot-way through which the applicators move vertically and oscillate for the purpose of imparting a massaging action to the muscles of the spinal processes. The single seat or applicator of Stauffer cannot produce a different result, and it does not have any different function than the six applicators of Parker. Whether the applicators move through the vertical or continue only through one side thereof is immaterial as to essential function. The same may be said of "tiltingly move."

The single applicator is found in Miller No. 1,953,424, not cited by the Patent Office, which exemplified a couch-like structure for the treatment of the human body, with a slot in its upper surface through which extends a support or arm having a single flat-topped pad or applicator on its upper end, the arm being moved forward and backward by a pitman rod driven through gearing by a motor. The pulsations of the applicator were at approximately the same rate as those of Stauffer. Thus a single flat-topped applicator operating upwardly through a slot in a couch by appropriate mechanical means for therapeutic treatment of the human body was old in the art.

The Gunderman Patent No. 1,825,588 shows a vibratory machine for the purpose of massaging the feet or manipulating other portions of the body. It has a single applicator or two oscillatable applicators side by side. There is no couch. But, after seeing Parker, had one thrust this device through a slot in the couch for the same purpose, invention would not have been attained.

There are numerous other devices patented in this same field. The result of a survey thereof led the trial court to find no invention. The Stauffer device is a collection of elements, old in the identical art, brought together and differentiated semantically from prior devices. It is a mere aggregation. No new function is performed thereby. Not only a skilled mechanic, but the draftsman of ordinary good sense could have combined them to produce the result if he were confronted with the necessity of differentiating them by wording from prior devices.

Since the findings of the trial judge were not clearly erroneous and were supported by evidence, this Court cannot set them aside. The record shows that the device was not patentable in the light of the prior art.

Affirmed.